SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Mark A. McDermott
Kenneth S. Ziman

Proposed Counsel for Debtors and
  Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

In re:                        :  Chapter 11
                              :
VERTIS HOLDINGS, INC., *et al.*,     :  Case No. 10- _____ ( )
                              :
         Debtors.        :  (Motion for Joint Administration Pending)
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION UNDER 11 U.S.C. §§ 105, 341, 1125, 1126, AND 1129 AND FED. R.
BANKR. P. 2002, 3017, 3018, AND 3020 (I) FOR ORDER (A) SCHEDULING
COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND
CONFIRMATION OF PLAN, (B) APPROVING FORM AND MANNER OF NOTICE OF
COMBINED HEARING, (C) ESTABLISHING PROCEDURES FOR OBJECTING TO
DISCLOSURE STATEMENT AND PLAN, AND (D) WAIVING REQUIREMENT FOR
MEETING OF CREDITORS AND (II) FOR ORDER (A) APPROVING PREPETITION
SOLICITATION PROCEDURES, (B) APPROVING ADEQUACY OF DISCLOSURE
STATEMENT AND (C) CONFIRMING PLAN OF REORGANIZATION**

         The debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby move (the "Motion") this Court pursuant to sections 105, 341, 1125,

1126 and 1129 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

---

[1]    The Debtors in these cases, along with the last four (4) digits of each Debtor's federal tax identification number,
    are Vertis Holdings, Inc. (1556); Vertis, Inc. (8322); ACG Holdings, Inc. (5968); Webcraft, LLC (6725);
    American Color Graphics, Inc. (3976); and Webcraft Chemicals, LLC (6726).

3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for (i) an order in the form attached hereto as <u>Exhibit A</u> (the "<u>Scheduling Order</u>") (a) scheduling a combined hearing on the adequacy of the Debtors' Amended Confidential Offering Memorandum, Consent Solicitation, Private Placement and Disclosure Statement Soliciting Acceptances Of A Prepackaged Plan Of Reorganization, dated November 1, 2010 (including any supplements and annexes thereto, the "<u>Disclosure Statement</u>") with respect to the Joint Prepackaged Chapter 11 Plan Of Vertis Holdings, Inc., <u>et al.</u>, dated November 1, 2010 (as may be amended, the "<u>Plan</u>") and confirmation of such Plan (the "<u>Combined Hearing</u>"), (b) approving the form and manner of notice of the Combined Hearing and commencement of the chapter 11 cases, (c) approving the procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan, and (d) waiving the requirement for meeting of creditors; and (ii) an order (the "<u>Confirmation Order</u>") (a) approving the prepetition solicitation procedures (the "<u>Solicitation Procedures</u>"), (b) approving the adequacy of the Disclosure Statement and (c) confirming the Plan.  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration Pursuant to Local Bankruptcy Rule 1007-2 in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "<u>First Day Declaration</u>") filed concurrently herewith under Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Bankruptcy Rules</u>").[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First-Day Declaration.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 341, 1125, 1126 and 1129.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 3017, 3018 and 3020.  Further support for the relief set forth herein is provided by the Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York, General Order M-387, dated Nov. 24, 2009 (the "Guidelines").

## BACKGROUND

### A.     The Chapter 11 Filings

3.     On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, the events leading to the filing of these chapter 11 cases and a summary of the Plan, is set forth in detail in the First-Day Declaration.  The Debtors continue to manage and operate their businesses as debtors-in-possession under Bankruptcy Code sections 1107 and 1108.

### B.     The Plan and Solicitation

4.     The Debtors have determined that prolonged chapter 11 cases would severely impair their ongoing business operations and threaten their viability as going concerns.  Accordingly, the Debtors have determined to seek their restructuring through the commencement of these prepackaged chapter 11 cases upon the terms contained in the Plan.

5.     The Plan contains eleven classes of claims and interests.  The holders of claims in four of those classes that are impaired under the Plan will receive recovery and, therefore, are entitled to vote on the Plan.  Three of those classes relate to the Debtors' Senior Secured Second Lien Notes due 2012 (the "<u>Second Lien Notes</u>").  The Second Lien Notes were issued in three series:  Series A, Series B, and Series C.  Claims on account of such Notes are classified in classes 4A, 4B, and 4C, respectively, under the Plan.  The fourth impaired class relates to the Debtors' Senior PIK Notes due 2014 (the "<u>Senior PIK Notes</u>"), which are classified in class 6 under the Plan.  The remaining seven classes are either (a) unimpaired under the Plan and, therefore, are deemed to accept such Plan, or (b) are impaired under the Plan and will receive no recovery and, therefore, are deemed to reject such Plan.

6.     The Debtors prepared the Disclosure Statement describing, among other things, the Plan and its effects on holders of claims against, and interests in, the Debtors.  Following the launch of the solicitation of votes on the Plan on November 1, 2010, the Debtors, through their voting agent, Kurtzman Carson & Consultants LLC ("<u>KCC</u>" or the "<u>Voting Agent</u>"), caused copies of the Disclosure Statement, the Plan (attached to the Disclosure Statement) and the appropriate Ballot (as defined herein) (a "<u>Solicitation Package</u>") to be transmitted to the holders of Notes whose claims are impaired under the Plan.  In accordance with applicable non-bankruptcy law, the Debtors have established December 1, 2010 at 12:00 a.m. (New York City time) as the deadline to vote to accept or reject the Plan (the "<u>Voting Deadline</u>").

7.     The Disclosure Statement provided that the out-of court exchange offers (the "<u>Exchange Offers</u>") were subject to an "early tender deadline" of November 15, 2010 at 5:00 p.m. (the "<u>Early Consent Time</u>").  Eligible holders of Notes could elect to tender their Notes, which would also constitute a vote on the Plan, by the Early Consent Time and, to the extent the

Exchange Offers were consummated, receive additional consideration pursuant to the Exchange Offers in exchange for such early participation. The Disclosure Statement made clear that such additional consideration would not be part of such claims' treatment under the Plan.

8.     Voting results as of the early consent time indicate that there is a low likelihood of reaching the 98% participation levels established in the out-of court exchange offers. Accordingly, the Debtors determined to commence these cases prior to the December 1, 2010, voting deadline in order to expedite their restructuring. However, it is clear from the voting results thus far that holders of the Notes have voted overwhelmingly to accept the Plan. Specifically, holders of approximately $428,182,596 in aggregate amount of the Second Lien Notes have voted on the Plan, which comprises 86.4% of the aggregate principal amount of Second Lien Notes outstanding as of the Petition Date. Of those who have voted, 98.29% in aggregate principal amount of the Series A Second Lien Notes have voted to accept the Plan and 100% in aggregate principal amount of the Series B and Series C Second Lien Notes have voted to accept the Plan. Holders of approximately $218 million in aggregate principal amount of the Senior PIK Notes have voted on the Plan, which comprises 84.2% of the aggregate principal amount of Senior PIK Notes outstanding as of the Petition Date. Of those who have voted, 99.98% in aggregate principal amount of the Senior PIK Notes have voted to accept the Plan.

9.     As soon as possible after the Voting Deadline, the Debtors will file a declaration of the Voting Agent certifying the results and methodology for tabulation of ballots accepting or rejecting the Plan (the "Tabulation Declaration").

## RELIEF REQUESTED

10.     By this Motion, the Debtors request that the Court immediately enter the Scheduling Order granting the following relief:

(a)     scheduling the Combined Hearing;

(b)     approving the form and manner of notice of the Combined Hearing and commencement of these chapter 11 cases;

(c)     approving procedures for objections to the adequacy of the Disclosure Statement and confirmation of the Plan; and

(d)     waiving the meeting of creditors if the Plan is confirmed within sixty (60) days.

11.     The Debtors also request that after appropriate notice and the Combined Hearing, the Court enter the Confirmation Order. A form of the Debtors' proposed Confirmation Order will be filed with the Court prior to the Combined Hearing. The Debtors will also file a memorandum of law (the "Confirmation Brief") in support of the relief proposed by the Confirmation Order prior to the Combined Hearing.

**BASIS FOR RELIEF AND APPLICABLE AUTHORITY**

**A.     Scheduling of the Combined Hearing and Approval of Notice Thereof**

**1.     Scheduling a Date for the Combined Hearing**

12.     Bankruptcy Code section 105(d)(2)(B)(vi) authorizes the bankruptcy court to combine a hearing on a disclosure statement with a hearing on confirmation of a plan of reorganization. The Debtors submit that such a combined hearing in these chapter 11 cases would promote judicial economy and the expedient reorganization of the Debtors. Any adverse effects of the chapter 11 filings upon the Debtors' businesses and going concern value will be minimized, and the benefit to creditors maximized, through prompt distributions and the reduction of administrative expenses of the estate – which are the hallmarks of a prepackaged plan of reorganization. Therefore, the Debtors hereby respectfully request entry of the Scheduling Order, pursuant to Bankruptcy Code section 105(d)(2)(B)(vi), setting a date for the Combined Hearing at which the Court will consider the adequacy of the Disclosure Statement, approval of the Solicitation Procedures and confirmation of the Plan.

13.     The Debtors also request that the Combined Hearing be set on or about December 16, 2010.  Bankruptcy Rules 2002(b) and 3017(a) require that twenty-eight (28) days notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization.  Additionally, Article X.D. of the Guidelines provides that notice of the hearing on adequacy of a disclosure statement and confirmation of a plan shall be mailed at least twenty-one (21) days prior to the hearing date.  However, the Guidelines and Bankruptcy Rule 9006(c) provided that such periods may be shortened.

14.     To the extent necessary, the Debtors request that these periods be shortened so that the Combined Hearing may be held in December 2010 so that the Debtors can attempt to consummate the Plan by year-end.  This will allow the Debtors to start their new fiscal year as reorganized entities with a deleveraged capital structure, thereby enhancing the Debtors' competitive position in the marketplace.  Indeed, the first calendar quarter of each year is significant for the Debtors, and they need to be in a position to advise customers, vendors, suppliers and employees that they have formally exited from chapter 11 prior to commencement of the critical first quarter.

15.     The importance of doing so is further underscored by the fact that the Debtors have faced significant financial issues for a prolonged period of time that must be definitely resolved.  This is the Debtors' second chapter 11 in two years, and since April of this year, the Debtors have attempted, unsuccessfully, to restructure their balance sheets through five different exchange offers.  Consummation of the Plan by year end will allow the Debtors to finally put these matters behind them.  None of the Note holders will be prejudiced by an expedited chapter 11 process.  They are all well aware of the Debtors' restructuring efforts,

having received multiple offering memoranda this year on the Debtors' financial condition. Accordingly, there is ample cause for setting the Combined Hearing on or about December 16, 2010 to maximize the chances of emerging by year end.

**2.      Deadline and Procedures for Objections to Adequacy of the Disclosure Statement and Confirmation of the Plan**

16.      Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of the Disclosure Statement, and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to the Plan.  As noted above, Bankruptcy Rule 2002(b) requires twenty-eight (28) days notice of such deadline.  Also as noted above, however, Bankruptcy Rule 9006(c) and the Guidelines allow reduction of this period for cause. Accordingly, for the reasons stated, the Debtors request that the Court set December 9, 2010 as the last date to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline").

17.      The Debtors propose that this Court direct that objections to approval of the Disclosure Statement or confirmation of the Plan, if any, shall:

(a)      be in writing;

(b)      comply with the Bankruptcy Rules, the Local Bankruptcy Rules, Chambers' procedures and other case management rules and orders of this Court;

(c)      state the name and address of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors;

(d)      state with particularity the legal and factual basis for such objection;

(e)      be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, together with proof of service thereof; and

(f)        be served by personal service or by overnight delivery, so as to be <u>ACTUALLY RECEIVED</u> no later than **4:00 p.m.** (prevailing Eastern time) on the Objection Deadline by (i) the Debtors, Vertis, Inc., 250 West Pratt Street, Baltimore, Maryland 21201, Attn: Chief Legal Officer; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attn: Mark A. McDermott, Esq. and Kenneth S. Ziman, Esq.; (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andrea B. Schwartz, Esq. and Paul K. Schwartzberg, Esq.; (iv) the parties listed in the consolidated list of twenty (20) largest unsecured creditors filed by the Debtors in these bankruptcy cases, or if any official committee of unsecured creditors has been appointed, counsel to such committee; (v) counsel to any other official committee appointed in these bankruptcy cases; (vi) counsel to General Electric Capital Corporation, the agent for the Prepetition Revolving Credit Facility and the proposed postpetition lender, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attn: Brian Swett and William D. Brewer; (vii) counsel to Ableco Finance LLC, the agent for the Prepetition Term Loan Facility, Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris; (viii) counsel to Avenue Investments, L.P., Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Ira S. Dizengoff; and (ix) counsel to the second lien lender group, Bracewell & Giuliani LLP, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020, Attn: Kurt Mayr and Kristen V. Campana.

18.      The Debtors submit that the proposed schedule for the Combined Hearing, including the establishment of the Objection Deadline, is in the best interests of all parties-in-interest in these chapter 11 cases. This schedule is intended to minimize the disruption to the Debtors' business and avoid the costs associated with lengthy chapter 11 proceedings. Additionally, it is appropriate that the Court approve the schedule requested by this Motion so that all parties-in-interest may be informed as promptly as possible of the schedule regarding the Combined Hearing. The Debtors submit that the proposed schedule and notice to be provided by the Debtors will afford all parties-in-interest ample notice of the proceedings.

### 3. Approval of the Form and Manner of the Combined Notice of the Combined Hearing and Commencement of the Chapter 11 Cases

19. A debtor is typically required to provide notice of (a) a hearing to consider the adequacy of the disclosure statement and (b) a hearing to consider confirmation of a plan to all creditors and equity holders. A debtor is also required to provide all creditors, equity holders and parties-in-interest with the notice of commencement of the chapter 11 case. In this case, it would be cost-effective if the Debtors were permitted to serve parties-in-interest with a combined notice rather than three individual notices. Therefore, the Debtors request authorization to send a combined notice of the commencement of the chapter 11 cases and of the Combined Hearing in substantially the form annexed hereto as Exhibit B (the "Combined Notice") solely to holders of claims and interests identified by the Debtors.

20. The Debtors modeled the Combined Notice after the template attached to the Guidelines as Exhibit D. In particular, the Combined Notice will identify the date, time and place of the Combined Hearing, set forth the deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan, the manner in which the Disclosure Statement and the Plan can be obtained or viewed electronically, and provide a summary of the treatment of each Plan class. In addition, the Combined Notice informs parties-in-interest of the commencement of the chapter 11 cases and the scheduling and possible waiver of the meeting of creditors pursuant to Bankruptcy Code section 341, as discussed below.

21. The Debtors propose to serve the Combined Notice no later than one business day after entry of the Scheduling Order. In addition, the Debtors propose to publish a notice (the "Publication Notice") substantially similar to the Combined Notice in the Wall Street Journal and any other publications the Debtors deem necessary in their sole discretion. The Debtors believe that the above service of the Combined Notice will provide sufficient notice to

all parties-in-interest in the Debtors' chapter 11 cases of the commencement of such cases, the date, time and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement and Solicitation Procedures or the confirmation of the Plan. In addition, the Debtors believe that the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice.

### 4. Waiver of Meeting of Creditors if Plan is Confirmed Within Sixty Days

22. Bankruptcy Code section 341(a) requires the Unites States Trustee to convene and preside at a meeting of creditors. Bankruptcy Code section 341(e), however, provides for the following exception to such provisions: "[n]otwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case."  11 U.S.C. § 341(e).

23. The Debtors submit that cause exists to waive the meeting of creditors as contemplated by Bankruptcy Code section 341(e).  The Debtors intend to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible.  Accordingly, pursuant to Bankruptcy Code section 341(e), the Debtors request that the Court enter an order directing the United States Trustee not to convene a meeting of creditors if the Plan is confirmed within sixty (60) days from the Petition Date.

### 5. Approval of Prepetition Solicitation Procedures

24. By this Motion, the Debtors also seek a determination from this Court that the Solicitation Procedures are in compliance with applicable nonbankruptcy law governing the adequacy of disclosure in connection with the solicitation and in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code.  As described above, the Debtors distributed the

Disclosure Statement to all holders of Notes and solicited acceptances of the Plan prior to the

commencement of these chapter 11 cases as required by Bankruptcy Rule 3018(b).  Bankruptcy

Code section 1126(b) specifically provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if –
>
>> (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or
>>
>> (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).

25.     Moreover, Bankruptcy Code section 1125(g) provides that:

> Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

11 U.S.C. § 1125(g).

26.     As an initial matter, the Exchange Offers with respect to the Second Lien

Notes and the Senior PIK Notes, and the related private placement of Vertis Holdings' common

stock, that were undertaken in connection with the Plan solicitation were conducted in

accordance with applicable non-bankruptcy law.  The Debtors are relying on certain exemptions

for the exchange offers and the private placement conducted in connection with their solicitation.

Specifically, the exchange offers and the private placement are exempt from the registration

requirements of the Securities Act of 1933 (the "Securities Act") pursuant to Section 4(2) and

Rule 903 of Regulation S under the Securities Act.

27.     Section 4(2) of the Securities Act provides that the registration requirements of the Securities Act will not apply to "[t]ransactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).  In addition, Rule 903 of Regulation S under the Securities Act provides that, subject to the conditions specified therein, the registration requirements of the Securities Act will not apply to offers and sales by issuers that occur outside the United States. In order to ensure compliance with Section 4(2) and Rule 903, the exchange offers and the private placement were open only (i) to "accredited investors" (as defined in Rule 501 of Regulation D under the Securities Act) and (ii) outside the United States to persons other than U.S. persons in reliance upon Regulation S under the Securities Act.

28.     Participants in the exchange offers and/or the private placement made or have acknowledged certain representations and warranties set forth in the related Disclosure Statement, the letter of transmittal and the subscription form stating that such holders were either accredited investors or participating pursuant to Regulation S.  Thus, the exchange offers and the private placement that were conducted in connection with the Plan solicitation were exempt from registration under the Securities Act.

29.     Secondly, the Debtors also seek this Court's determination that the Solicitation Procedures are in compliance with the Bankruptcy Code.  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims for the purpose of soliciting their votes accepting or rejecting a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."  Fed. R. Bankr. P. 3017(e).  As set forth in further detail below, the Debtors

submit that the Solicitation Procedures meet the requirements of Bankruptcy Rules 3017 as well as all other applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

(i)    Approval of Form of Ballot.

30.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form No. 14, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors distributed ballots, in the forms attached hereto as Exhibit C (collectively, the "Ballots"), to holders of Claims in Classes 4A, 4B, 4C and 6. In particular, Exhibit C-1 is the form of Ballot provided to beneficial holders of Claims in Class 4A who hold Series A Second Lien Notes through a Nominee; Exhibit C-2 is the form of Ballot provided to beneficial holders of Claims in Class 4B who hold Series B Second Lien Notes through a Nominee; Exhibit C-3 is the form of Ballot provided to beneficial holders of Claims in Class 4C who hold Series C Second Lien Notes through a Nominee; and Exhibit C-4 is the form of Ballot provided to beneficial holders of Claims in Class 6 who hold Senior PIK Notes through a Nominee. The Ballots attached hereto are the form of Ballots the Nominees transmitted to holders of claims entitled to vote on the Plan. While the form for the Ballots is based on Official Form No. 14, the form has been modified to address the particular aspects of these chapter 11 cases and to include certain additional information that the Debtors believe to be relevant and appropriate for each such class of Claims.

31.    In addition, the Debtors distributed to Nominees Master Ballots in the forms attached hereto as Exhibit D. In particular, Exhibit D-1 is the form of Master Ballot provided to Nominees for beneficial holders of Claims in Class 4A who hold Series A Second Lien Notes; Exhibit D-2 is the form of Master Ballot provided to Nominees for beneficial holders of Claims in Class 4B who hold Series B Second Lien Notes; Exhibit D-3 is the form of Master Ballot provided to Nominees for beneficial holders of Claims in Class 4C who hold

Series C Second Lien Notes; and <u>Exhibit D-4</u> is the form of Master Ballot provided to Nominees for beneficial holders of Claims in Class 6 who hold Senior PIK Notes.

32.     The Debtors submit that the form of the Ballots and Master Ballots satisfy Bankruptcy Rule 3017(d) and should be approved.

(ii)     <u>Solicitation of Holders of Notes</u>.

33.     As noted above, the Voting Deadline is December 1, 2010 at 12:00 a.m. (New York City time).  The holders of Notes hold claims in either Classes 4A, 4B, 4C or 6.[3]  The Solicitation Package was submitted to all such holders.  The vast majority of the holders of Notes hold their Notes in brokerage accounts and often through several layers of ownership.  As is typical of such securities, the Debtors are unable to identify with certainty the individual, beneficial holders of their securities.  Thus, it was necessary for the Debtors to serve the Solicitation Packages in a manner customary in the securities industry so as to maximize the likelihood that the beneficial owners of the Notes received the materials in a timely fashion.

34.     Specifically, on or about November 1, 2010, the Voting Agent (with the assistance of Merrill Corporation) transmitted the Solicitation Packages by overnight courier or hand delivery, and Bondholder Communications Group, LLC (the "<u>Information and Exchange Agent</u>") transmitted the Solicitation Packages by electronic mail, to all banks, brokers and other

---

[3]     Holders of Claims in Class 1 Priority Non-Tax Claims, Class 2 Revolving Loan Claims, Class 3 Term Loan Claims, Class 5 Other Secured Claims and Class 7 General Unsecured Claims and Interests in Class 11 Intercompany Interests are unimpaired under the Plan and, therefore, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have accepted the Plan.  Accordingly, the Debtors did not solicit votes from Classes 1, 2, 3, 5, 7 and 11.  Holders of Class 9 Subordinated 510(b) Claims shall not receive or retain any property under the Plan, and Interests in Class 10 Interests in Vertis Holdings shall be cancelled, terminated and extinguished under the Plan.  Thus, pursuant to Bankruptcy Code section 1126(g), these holders are deemed to have rejected the Plan.  Therefore, the Debtors did not solicit votes from Classes 9 and 10.  With respect to the Claims and Interests in Classes 9 and 10, the Debtors will request that the Plan be confirmed pursuant to Bankruptcy Code section 1129(b).  As set forth above, the Debtors propose to provide all known holders of Claims and Interests with notice of the Combined Notice.

nominees (each, a "Nominee") that were identified by the Voting Agent and the Debtors as an entity through which beneficial owners held Notes.  In addition, each Nominee was instructed to distribute the Solicitation Packages to the beneficial owners for which the Nominee held Notes promptly upon receipt of the Solicitation Packages from the Voting Agent.[4]

35.     The beneficial owners of the Notes were instructed to relay their decision to accept or reject the Plan (and/or participate in the Exchange Offers) to their Nominee in accordance with the terms of the beneficial holders' Ballot included in the Solicitation Packages and any instructions provided by the Nominee.  The Nominees were to be instructed by the beneficial holders of the Notes to tender (or block) their Notes in accordance with their instructions.  The Voting Agent also transmitted the Master Ballots to each Nominee in sufficient time for the Nominees to record the individual votes of their beneficial owners on the Master Ballot in accordance with instructions provided by the Voting Agent.  Nominees were provided with a deadline to complete and return their Master Ballots to the Voting Agent by 5:00 p.m. (New York City time) on December 1, 2010.

36.     The Ballot for the Plan was bound into the Disclosure Statement in a readily apparent location, just inside the back cover of the bound book.  The cover of the Disclosure Statement included the following language: "HOLDERS OF NOTES SHOULD REFER TO THE . . . BALLOT(S) ATTACHED HERETO AS APPENDIX B FOR INSTRUCTIONS ON HOW TO TENDER NOTES . . . AND/OR VOTE ON THE

---

[4]     On November 9, 2010, supplemental packages were transmitted to the Nominees in light of the Debtors' supplement to the Disclosure Statement on November 9, 2010 to provide third-quarter financial statements.

PREPACKAGED PLAN OF REORGANIZATION."  This ensured that every holder that received the Disclosure Statement also received the Ballot.

37.     All communications with holders, the relevant depositories, and the Nominees with respect to the voting options in connection with the Exchange Offers and the Plan were consistent within the Ballot, so that holders would clearly understand the choices.  All holders were required to choose one of four options with respect to the Exchange Offers and the Plan.  The four voting options were outlined as follows:

> OPTION 1.  TENDER into the Exchange Offer; vote to ACCEPT the Plan of Reorganization.
>
> OPTION 2.  NOT TENDER into the Exchange Offer; vote to ACCEPT the Plan of Reorganization.
>
> OPTION 3.  NOT TENDER into the Exchange Offer; vote to REJECT the Plan of Reorganization.
>
> OPTION 4.  Take no action; NOT TENDER into the Exchange Offer; NOT VOTE on the Plan of Reorganization.

38.     The Ballot specifically included language that said "By providing instructions to your Nominee holding your . . . Notes in the form of this Ballot and in the Letter of Transmittal, you are requesting that your Nominee (1) tender or block, as the case may be, the underlying . . . Notes on your behalf in accordance with the instructions you provided, and (2) execute a master ballot on your behalf that reflects your instructions on this Ballot and in the Letter of Transmittal with respect to the Plan of Reorganization."  The Ballot specifically indicated that the return of the instructions to the firm instructed the Nominee to cast the holder's vote on a Master Ballot.  These instructions ensured that beneficial holders followed the tender procedure established by the Debtors.  The Ballot provided the contact information of the Voting Agent and Information and Exchange Agent engaged by the Debtors in these cases to respond to any questions of individual Noteholders or their Nominees.

39.     The Debtors submit that the foregoing solicitation process satisfies

Bankruptcy Rule 3017(e).

(iii)     <u>Approval of Voting Deadline.</u>

40.     Bankruptcy Rule 3017(c) provides that, on or before approval of a

disclosure statement, the court "shall fix a time within which the holders of claims and equity

interests may accept or reject the plan."  Fed. R. Bankr. P. 3017(c).  Bankruptcy Rule 3018(b)

provides that a holder of a claim or equity security will not be deemed to have accepted or

rejected the plan "if the court finds after notice and a hearing . . . that an unreasonably short time

was prescribed for such creditors and equity security holders to accept or reject the plan."  Fed. R.

Bankr. P. 3018(b).

41.     The Guidelines states that:

Under ordinary circumstances, in determining whether the time allowed for
casting acceptances and rejections on the Debtor's plan satisfied Fed. R. Bankr. P.
3018(b), the Court will approve as reasonable:

. . .

2.  For securities which are not Publicly Traded Securities
and for debt for borrowed money which is not evidenced by a
Publicly Traded Security, a fourteen (14) day voting period,
measured from the date of commencement of mailing.

3.  For all other claims and interests, a twenty-one (21) day
voting period, measured from the date of commencement of
mailing.

The Guidelines, § VII.A.

42.     Here, the holders of Notes in Classes 4A, 4B, 4C and 6 are of the type

described in item 2 of section VII.A of the Guidelines quoted above – non-publicly traded

securities.  Nonetheless, such holders will be provided with twenty-one (21) days between the

commencement of the solicitation period and the Voting Deadline.  As such, the time period for

creditors to accept or reject the Plan was not "unreasonably short" as required by Bankruptcy Rule 3018(b) and complies with the Guidelines.

(iv) <u>Record Date.</u>

43. Bankruptcy Rule 3017(d) provides that the "date the order approving the disclosure statement is entered" shall be the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Bankruptcy Rule 3017(d), unless another date is fixed by the court. Fed. R. Bankr. P. 3017. Because solicitation in these cases occurred prior to the Petition Date, in conjunction with solicitation of votes on the Exchange Offers, the Debtors request that the Court establish a record date of December 1, 2010 (the "<u>Record Date</u>"), corresponding to the Voting Deadline, for the purpose of determining which Holders of Class 4A, 4B, 4C and 6 Claims are entitled to vote on the Plan.

44. The Voting Deadline is the appropriate Record Date because the voting procedures required that the Notes be "tendered" or "blocked" in conjunction with a vote on the Plan. Indeed, an exchange offer typically relies on the "tender" or "presentation" of the bond position, and does not utilize a record date, whereas, a bankruptcy plan solicitation typically establishes a record date for voting purposes. In order to preserve the integrity of the Plan vote, yet still allow the current holders to tender into the exchange, the Debtors relied on the concept of tendering, or "blocking," the beneficial owner's bonds both for the Exchange Offers and the Plan vote. This allows the Voting Deadline for the Plan solicitation, which was also the stated expiration date of the related Exchange Offers, to be used as the record date for voting on the Plan. Because the underlying bond positions of the voting parties were actually tendered to the Debtors, and, in effect, will be held by the Debtors' agent at all times thereafter until the Voting

Deadline, each tendering holder is by necessity the holder of record as of the Record Date/Voting Deadline.

45.     The use of the tender process coupled with the use of a common voting deadline/record date ensured that only holders as of the Record Date were able to cast a vote on the Plan.  The use of the voting deadline as the record date is a practical and workable solution and consistent with procedures that have been approved for bondholder votes in other cases, including In re CIT Group, Inc., Case No. 09-16565 (AG) (Bankr. S.D.N.Y. November 3, 2009); In re Intermet Corporation, Case No. 04-67597 (Bankr. E.D. Mich. 2004) and In re Hayes Lemmerz International, Inc., Case No. 09-11655 (MFW) (Bankr. D. Del. Sept. 2, 2009).

46.     In short, the Debtors submit that the Solicitation Procedures for the Notes were sufficient to ensure that the Plan was transmitted to substantially all holders of claims entitled to vote on the Plan and should be approved.  In addition, the Debtors request that the Court establish the Petition Date as the date for determining those holders of Claims entitled to receive the Combined Notice.

(v)     Approval of Procedures for Vote Tabulation.

47.     The Voting Agent will adhere to the following protocol with respect to Ballots returned by holders of Claims in Class 4A, 4B, 4C and Class 6: (i) if a creditor cast more than one Ballot voting the same Claim before the Voting Deadline, the Ballot which bears the latest date of receipt by the Debtors, as the case may be, before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballot; (ii) creditors were and are required to vote all of their Claims within a particular note indenture under the Plan either to accept or reject the Plan and may not split their vote; and (iii) the following Ballots will not be counted: (a) any Ballot that was properly completed, executed, and timely returned to the Debtors but did not or does not indicate an acceptance or rejection of the Plan, or that indicates

both an acceptance and rejection of the Plan, (b) any Ballot received after the Voting Deadline unless the Debtors agree to extend the Voting Deadline with respect to such Ballot, (c) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (d) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan, and (e) any unsigned Ballot.

48.     Because the Voting Deadline is December 1, 2010 at 12:00 a.m. (New York City time), holders of Claims in Classes 4A, 4B, 4C and 6 may continue to vote on the Plan. The Debtors intend to count such votes when evaluating whether the Plan satisfies the requirements of the Bankruptcy Code.  By this Motion, the Debtors request the authority to include these votes in the final tabulation of votes on the Plan.[5]  Bankruptcy Code section 1125(g) allows a debtor to continue soliciting votes for acceptance or rejection of a plan after the commencement of a case without the requirement of a court-approved disclosure statement if the holder was solicited before the commencement of the case in a manner that complied with applicable nonbankruptcy law.  Additionally, Article III.C of the Guidelines provides that "Unless the Court orders otherwise, if a Chapter 11 case is commenced by or against the Debtor . . . , after the Debtor has transmitted all solicitation materials to holders of claims and interests whose vote is sought but before the deadline for casting acceptances or rejections of the Debtor's plan . . . the Debtor and other parties in interest shall be permitted to accept but not solicit ballots until the Voting Deadline; and after notice and a hearing the Court shall determine

---

[5]     To the extent necessary, this Motion is also a motion pursuant to the Guidelines to determine the effect of all votes obtained after the Petition Date.  See The Guidelines, III.C.  The Debtors request that all votes received following the Petition Date that are received in accordance with the Solicitation Procedures and not otherwise challenged by the Debtors on other grounds, be counted for Plan confirmation purposes.

the effect of any and all such votes."  As set forth above, the prepetition solicitation of votes was in accordance with applicable nonbankruptcy law.  See In re CIT Group, Inc., Case No. 09-16565 (AG) (Bankr. S.D.N.Y. November 3, 2009) (approving continued postpetition solicitation of holders of notes without an approved disclosure statement under 1125(g)).

           (vi)    <u>Non-Transmission of Disclosure Statement to Certain Creditors and Equity Holders.</u>

49.     For the reasons set forth herein, the Debtors request a waiver of the Bankruptcy Rule requirement that the Debtors mail a copy of the Disclosure Statement and Plan to holders of claims or interests deemed to have accepted or rejected the Plan.  See Fed. R. Bankr. P. 3017.  The Debtors have made the Disclosure Statement and the Plan available at no cost on KCC's website and have included a summary of the Plan in the Combined Notice.  Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Combined Notice, Disclosure Statement and Plan to holders of claims and interests deemed to have accepted or rejected the Plan.  Service upon such interest holders will be extremely expensive for the Debtors to complete.  Accordingly, the Debtors submit that it is not appropriate to require the Debtors to transmit a copy of the Disclosure Statement, Plan or Solicitation Package to the holders of claims or interests other than the creditors entitled to vote on the Plan (as previously completed by the Debtors).

**B.**      **Approval of Adequacy of the Disclosure Statement and Confirmation of Plan**

      **1.**      **Approval of Disclosure Statement**

50.     At the Combined Hearing, the Debtors will seek the Court's ruling that the prepetition solicitation complied with sections 1125(g) and 1126(b)(2) of the Bankruptcy Code because the Disclosure Statement provided adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code.  Accordingly, the Debtors hereby request that, at the

Combined Hearing, the Court approve the Disclosure Statement as containing adequate

information under section 1125 of the Bankruptcy Code.

51.     Section 1125 of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable
> in light of the nature and history of the debtor and the condition of the debtor's
> books and records, that would enable a hypothetical reasonable investor typical of
> holders of claims or interests of the relevant class to make an informed judgment
> about the plan.

11 U.S.C. § 1125(a)(1).

52.     In examining the adequacy of the information contained in a disclosure

statement, a bankruptcy court has broad discretion.  See Texas Extrusion Corp. v. Lockheed

Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In re Dakota Rail, 104

B.R. 138, 142 (Bankr. D. Minn. 1989) (court has "wide discretion to determine . . . whether a

disclosure statement contains adequate information without burdensome, unnecessary and

cumbersome detail").  Accordingly, the determination of whether a disclosure statement contains

adequate information is made on a case-by-case basis, focusing on the unique facts and

circumstances of each case.  In that regard, courts generally examine whether the disclosure

statement contains such information as:

- the circumstances that gave rise to the filing of the bankruptcy petition;

- a complete description of the available assets and their value;

- the anticipated future of the debtor;

- the source of the information provided in the disclosure statement;

- a disclaimer, which typically indicates that no statements or information
  concerning the debtor or its assets or securities are authorized other than those
  set forth in the disclosure statement;

- the condition and performance of the debtor while in chapter 11;

- information regarding claims against the estate;

- a liquidation analysis setting forth the estimated return that creditors would
  receive under chapter 7;

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

- a summary of the plan of reorganization (or liquidation);

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- the collectibility of any accounts receivable;

- any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the actual or projected value that can be obtained from avoidable transfers;

- the existence, likelihood, and possible success of non-bankruptcy litigation;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); see also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995) (determination of whether a disclosure statement contains adequate information made on case-by-case basis).

53.     The Debtors submit that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125.  The Disclosure Statement is extensive and comprehensive and satisfies each of the relevant informational items outlined in In re Scioto Valley Mortgage Co.  Indeed, the Disclosure Statement contains descriptions and summaries of, among other things, (a) the Plan, (b) certain events preceding the commencement of these chapter 11 cases, (c) claims asserted against the Debtors' estates, (d) securities to be issued under the Plan, (e) risk factors affecting the Plan, (f) a liquidation analysis setting forth the estimated return that creditors would receive in chapter 7, (g) financial information and

valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan, and (h) federal tax law consequences of the Plan.

54.     Accordingly, the Debtors submit that for the reasons set forth herein, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and should be approved.

**2.     Confirmation of Plan**

55.     The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule the Combined Hearing at which time the Debtors will seek confirmation of the Plan.  Prior to the Combined Hearing, the Debtors will file the Confirmation Brief (i) demonstrating that the Plan satisfies each requirement for confirmation and (ii) responding to objections to confirmation, if any.

**NOTICE**

56.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to: (a) the United States Trustee for Region 2; (b) the Internal Revenue Service; (c) the New York State Department of Taxation and Finance; (d) the New York City Department of Finance; (e) the United States Attorney General; (f) the New York State Attorney General; (g) the Securities Exchange Commission; (h) those parties identified in the schedule of the largest unsecured creditors annexed to the Debtors' petitions; (i) Winston & Strawn LLP, counsel to General Electric Capital Corporation, the agent for the Prepetition Revolving Credit Facility and the DIP lender; (j) Schulte, Roth & Zabel LLP, counsel to Ableco Finance LLC, the agent for the Prepetition Term Loan Facility; (k) Akin Gump Strauss Hauer & Feld LLP, counsel to Avenue Investments, L.P.; and (l) Bracewell & Giuliani LLP,

counsel to the second lien lender group. The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the orders requesting the relief requested herein and grant such other and further relief as is just and proper.

Dated: New York, New York
      November 17, 2010

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:     */s/ Mark A. McDermott*
        Mark A. McDermott
        Kenneth S. Ziman
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Proposed Counsel for Debtors and
        Debtors-in-Possession