**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
VERTIS HOLDINGS, INC., et al.,          :        Case No. 10-16170 (ALG)
                                        :
                                        :        (Jointly Administered)
                  Debtors.              :
                                        :
-----------------------------------------------------------------x
```

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPER-PRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1) AND 364(e) AND (B) UTILIZE CASH COLLATERAL OF CERTAIN PREPETITION SECURED PARTIES, (II) AUTHORIZING THE REPAYMENT IN FULL OF AMOUNTS OWED UNDER THE PREPETITION SENIOR SECURED REVOLVING CREDIT FACILITY, (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SENIOR SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c), AND (V) GRANTING RELATED RELIEF

Upon the motion dated November 17, 2010 (the "Motion") of Vertis Holdings, Inc. ("Holdings") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors")[1] in the above-referenced chapter 11 cases (the "Debtors' Reorganization Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"), under sections 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), seeking, *inter alia*:

---

[1] The Debtors in these cases, along with the last four (4) digits of each Debtor's federal tax identification number, are Vertis Holdings, Inc. (1556); Vertis, Inc. (8322); ACG Holdings, Inc. (5968); Webcraft, LLC (6725); American Color Graphics, Inc. (3976); and Webcraft Chemicals, LLC (6726).

(i) authorization for Vertis, Inc. ("<u>Vertis</u>" or the "<u>Borrower</u>") to obtain senior secured postpetition financing in an aggregate principal amount not to exceed $200,000,000 (the "<u>DIP Credit Facility</u>"), pursuant to section 364 of the Bankruptcy Code, and authorization for Holdings and each of the Borrower's existing and subsequently acquired or formed direct and indirect domestic subsidiaries (together with Holdings, the "<u>Guarantors</u>") to guarantee the Borrower's obligations under the DIP Credit Facility, from General Electric Capital Corporation ("<u>GE Capital</u>") as administrative agent and collateral agent (in such capacities, the "<u>DIP Agent</u>") for itself and certain other financial institutions (collectively with GE Capital, the "<u>DIP Lenders</u>"), pursuant to the terms of this Interim Order and that certain Senior Secured Priming and Superpriority Debtor-In-Possession Credit Agreement, by and among, *inter alia*, the Borrower, the Guarantors, the DIP Agent and the DIP Lenders, in substantially the form attached hereto as <u>Exhibit A</u> (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), and any related documents required to be delivered by or in connection with the DIP Credit Agreement (collectively, the "<u>DIP Credit Documents</u>");

(ii) authorization for the Debtors to execute and enter into the DIP Credit Documents and to perform such other and further acts as may be required in connection with the DIP Credit Documents;

(iii) authorization for the Debtors to grant security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Agent, for the benefit of itself and the DIP Lenders, to secure the

repayment of all obligations of the Debtors under and with respect to the DIP Credit Facility;

(iv) authorization for the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) constituting Revolving Priority Collateral (as such term is defined in the First Lien Intercreditor Agreement (as defined hereinafter)) (as so defined, the "Cash Collateral"), on the terms and conditions set forth in this Interim Order, the Term Loan/Second Lien Adequate Protection Order (as defined hereinafter) and in the DIP Credit Agreement;

(v) adequate protection of the liens and security interests (such liens and security interests, the "Prepetition Liens") of the lenders (such lenders in such capacities, the "Prepetition Lenders") under that certain Senior Secured Credit Agreement, dated as of October 17, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"), among the Borrower, certain other persons designated as "Credit Parties" thereunder, the Prepetition Lenders and GE Capital as Agent (in such capacity or in the capacity of Collateral Agent under the Prepetition Security Agreement (as defined hereinafter) on behalf of the Prepetition Lenders, the "Prepetition Agent") and as a Prepetition Lender, which Prepetition Liens are being primed by the liens securing the repayment of the DIP Credit Facility, as more fully set forth in this Interim Order;

(vi) authorization for the Borrower to use a portion of the proceeds from the DIP Credit Facility upon entry of this Interim Order (a) to pay in full, in cash, as a condition to closing the DIP Credit Facility, the outstanding balance of the Revolving Credit Advances (as defined in the Prepetition Credit Agreement and referred to in this Interim Order as the "Prepetition Revolving Credit Advances"), (b) if necessary, to

provide cash collateral for the repayment of the Borrower and or the Guarantors' obligations under or with respect to letters of credit issued and outstanding on the Commencement Date (as defined hereinafter) under the Prepetition Credit Agreement (the "Prepetition Letters of Credit") in an amount equal to 105% of the face amount of such Prepetition Letters of Credit (the "Prepetition Letter of Credit Obligations"), (c) to pay and reimburse the Prepetition Agent (including, without limitation, in its capacity as "Collateral Agent" under the Prepetition Security Agreement, as defined hereinafter) for unpaid fees, costs and expenses incurred by the Prepetition Agent under the Prepetition Credit Agreement and/or the Prepetition Security Agreement, whether incurred prior or subsequent to the Commencement Date, at the time and in the manner due under the Prepetition Credit Agreement or the Prepetition Security Agreement, as applicable, and to pay the Prepetition Agent for such indemnification rights or claims that it has or may have under the Prepetition Credit Agreement and/or the Prepetition Security Agreement, whether incurred prior or subsequent to the Commencement Date, at the time and in the manner due under the Prepetition Credit Agreement or the Prepetition Security Agreement, as applicable (all such fees, costs, expenses and indemnification rights or claims of the Prepetition Agent, the "Prepetition Agreement Expenses"), and (d) such other uses as are approved under this Interim Order;

(vii) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders to implement the terms of this Interim Order;

(viii) an emergency interim hearing (the "Interim Hearing") on the Motion for the Court to consider entry of this Interim Order, which authorizes the Borrower to

borrow or obtain letters of credit under the DIP Credit Documents, on an interim basis, up to an aggregate principal or face amount not to exceed $185,000,000; and

(ix) the scheduling of a final hearing (the "<u>Final Hearing</u>") on the Motion no later than December 16, 2010 to consider entry of a Final Order authorizing the balance of the borrowings and letter of credit issuances under the DIP Credit Documents on a final basis and approval of notice procedures with respect thereto;

The Interim Hearing having been held by this Court on November 19, 2010; and the Court having considered the Motion and all pleadings related thereto, including the record made at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      On November 17, 2010 (the "<u>Commencement Date</u>"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors have provided notice of the Motion and the Interim Hearing by facsimile, electronic mail or overnight mail to:  (a) the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andrea B. Schwartz, Esq.; (b) the Internal Revenue Service, Centralized Insolvency Operations, 11601 Roosevelt Boulevard, Mail Drop N781, Philadelphia, Pennsylvania 19255; (c) the New York State

Department of Taxation and Finance, Office of Counsel, W.A. Harriman Campus, Building 9, Albany, New York 12227; (d) the New York City Department of Finance, Correspondence Unit, 66 John Street, 3rd Floor, New York, New York 10038-3735; (e) the United States Attorney General, US Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001; (f) the New York State Attorney General, Andrew Cuomo, The Capitol, Albany, NY 12224-0341; (g) the Securities Exchange Commission, Attn: Michael Berman, General Counsel, 100 F Street NE, Washington, DC 20549; (h) the parties listed in the consolidated list of twenty (20) largest unsecured creditors filed by the Debtors in the Debtors' Reorganization Cases, or if any official committee of unsecured creditors has been appointed, counsel to such committee; (i) counsel to any other official committee appointed in the Debtors' Reorganization Cases; (j) counsel to GE Capital, the DIP Agent and the Prepetition Agent, Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, Illinois 60601, Attn: Brian I. Swett, and Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attn: William D. Brewer; (k) counsel to Ableco Finance LLC, the Prepetition Term Loan Agent with respect to the Term Loan B and the Term Loan Collateral Agent (as defined hereinafter), Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris; (l) Bank of America, N.A., the Prepetition Term Loan Agent with respect to the Term Loan C-1 and the Term Loan C-2, 200 Glastonbury Boulevard, Glastonbury, CT 06033; (m) counsel to Avenue Investments, L.P., Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Ira S. Dizengoff; (n) counsel to the second lien lender group, Bracewell & Giuliani LLP, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020, Attn: Kurt Mayr and Kristen V. Campana; and (n) all holders of liens against the Debtors ((a) through (o), collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, the Court concludes that no further notice is necessary.

D.     No official committee of unsecured creditors ("Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Debtors' Reorganization Cases.

E.     Subject to Paragraph 33 below, the Debtors hereby admit, stipulate and agree that:

(1)     Pursuant to the Prepetition Credit Agreement, the Prepetition Lenders agreed to extend a revolving credit facility to, and issue letters of credit for, the Borrower from time to time, including, *inter alia*, the Prepetition Revolving Credit Advances in an aggregate principal committed amount of up to $250,000,000 (the "Prepetition Revolving Loans").  The Prepetition Credit Agreement, along with any other agreements, instruments, notes, guaranties and other documents executed in connection therewith, including, but not limited to, the First Lien Intercreditor Agreement and the Second Lien Intercreditor Agreement (as defined hereinafter), in each case as the same may be amended, modified and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Prepetition Credit Documents" and are available upon request from counsel to the Debtors or counsel to the Prepetition Agent.  All obligations of the Debtors arising under the Prepetition Credit Agreement or any other Prepetition Credit Document, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Credit Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Agent or Prepetition Lenders by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and

specifically including the Prepetition Agreement Expenses, shall hereinafter be referred to as the "Prepetition Obligations."

(2)     Pursuant to certain Collateral Documents (as such term is defined in the Prepetition Credit Agreement and referred to in this Interim Order as the "Prepetition Collateral Documents"), including that certain Security Agreement, dated as of October 17, 2008, and entered into by and among the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, Vertis, Holdings, and each other party signatory thereto (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Security Agreement"), each Debtor granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, to secure such Debtor's obligations under the Prepetition Credit Documents, a security interest in and continuing lien on substantially all of such Debtor's assets, including, but not limited to, all of such Debtor's accounts, chattel paper, documents, general intangibles, goods (including, without limitation, inventory, equipment and fixtures), instruments, intellectual property, investment property, deposit accounts, money, cash or cash equivalents, supporting obligations and letter of credit rights, commercial tort claims, and a pledge of one hundred percent (100%) of the capital stock of each of its domestic subsidiaries and sixty-five percent (65%) of the capital stock of each of its foreign subsidiaries, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, in each case whether then owned or existing or thereafter acquired or arising.  All collateral granted or pledged by the Debtors pursuant to the Prepetition Collateral Documents, the Prepetition Term Loan Collateral Documents (as defined hereinafter) and the Prepetition Second Lien Collateral Documents (as defined hereinafter) shall collectively be referred to herein as the "Prepetition Collateral."

(3)     Pursuant that certain Term Loan Credit Agreement, dated as of October 17, 2008 (as amended, restated, supplemented or otherwise modified from time to time,

the "Prepetition Term Loan Credit Agreement"), the agents (each, a "Prepetition Term Loan Agent," and collectively, the "Prepetition Term Loan Agents") and the lenders under the Prepetition Term Loan Credit Agreement (collectively, the "Prepetition Term Loan Lenders") agreed to extend term loans to the Borrower from time to time, including, *inter alia*, a Term Loan B, a Term Loan C-1 and a Term Loan C-2 in the original principal amounts of $150,000,000, $122,000,000 and $123,463,852.46, respectively (collectively, the "Prepetition Term Loans"). The Prepetition Term Loan Credit Agreement, along with any other agreements, instruments, notes, guaranties and other documents executed in connection therewith, in each case as the same may be amended, modified and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Prepetition Term Loan Credit Documents" and are available upon request from counsel to the Debtors or counsel to the Prepetition Term Loan Lenders. All obligations of the Debtors arising under the Prepetition Term Loan Credit Agreement or any other Prepetition Term Loan Credit Document, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Term Loan Lenders by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "Prepetition Term Loan Obligations."

(4) Pursuant to certain security documents (referred to in this Interim Order as the "Prepetition Term Loan Collateral Documents"), each Debtor granted to the Collateral Agent (as such term is defined in the Prepetition Term Loan Credit Documents and referred to in this Interim Order as the "Term Loan Collateral Agent"), for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, to secure such Debtor's obligations

under the Prepetition Term Loan Credit Documents, a security interest in and lien on the Prepetition Collateral.

(5) That certain Intercreditor Agreement, dated as of October 17, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Intercreditor Agreement," a copy of which is attached to the Motion as Exhibit C thereto), by and between the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, and the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, and acknowledged by Holdings, the Borrower and the Guarantors, sets forth, *inter alia*, the relative priority of the security interests in and liens on the Prepetition Collateral granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, and the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders.

(6) Pursuant to that certain Indenture, dated as of October 17, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Second Lien Note Indenture"), Vertis issued those certain 18.5% Senior Secured Second Lien Notes (the "Prepetition Second Lien Notes") in an aggregate principal amount of $350,000,000 to various holders (the "Prepetition Second Lien Noteholders"). The Prepetition Second Lien Note Indenture and the Prepetition Second Lien Notes, along with any other documents or instruments executed and delivered in connection with the Prepetition Second Lien Note Indenture and the Prepetition Second Lien Notes, in each case as the same may be amended, modified and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Prepetition Second Lien Debt Documents" and are available upon request from counsel to the Debtors or counsel to the Indenture Trustee (the "18.5% Indenture Trustee") under the Prepetition Second Lien Note Indenture. All

obligations of the Debtors arising under the Prepetition Second Lien Note Indenture or any other Prepetition Second Lien Debt Document, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the 18.5% Indenture Trustee and/or the Prepetition Second Lien Noteholders by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "Prepetition Second Lien Obligations."

(7)     Pursuant to certain security documents (referred to in this Interim Order as the "Prepetition Second Lien Collateral Documents"), each Debtor granted to the 18.5% Indenture Trustee, to secure such Debtor's obligations under the Prepetition Second Lien Debt Documents, a security interest in and lien on the Prepetition Collateral.

(8)     That certain Intercreditor Agreement (Second Lien), dated as of October 17, 2008 (as amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Intercreditor Agreement," a copy of which is attached to the Motion as Exhibit D thereto, and collectively with the First Lien Intercreditor Agreement, the "Intercreditor Agreements"), by and among the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, and the 18.5% Indenture Trustee, for the benefit of the Prepetition Second Lien Noteholders, and acknowledged by Holdings, the Borrower and the Guarantors, sets forth, *inter alia*, the relative priority of the security interests in and liens on the Prepetition Collateral granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, and the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, on the one hand, and the

18.5% Indenture Trustee, for the benefit of the Prepetition Second Lien Noteholders, on the other hand.

(9)     The terms and conditions of adequate protection of the liens and security interests (such liens and security interests, the "Prepetition Term Loan Liens") of the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, are set forth in a separate adequate protection order of the Court (the "Term Loan/Second Lien Adequate Protection Order");

(10)     The terms and conditions of adequate protection of the liens and security interests (such liens and security interest, the "Prepetition Second Liens") of the 18.5% Indenture Trustee and the Prepetition Second Lien Noteholders are set forth in the Term Loan/Second Lien Adequate Protection Order;

(11)     All Prepetition Credit Documents executed and delivered by the Debtors to the Prepetition Agent are valid and enforceable by the Prepetition Agent and the Prepetition Lenders against each of the Debtors.  The Prepetition Agent duly perfected its liens upon and security interests in the Prepetition Collateral by, among other things, filing financing statements, mortgages and fixture filings, entering into deposit account control agreements and, where necessary, possession of relevant instruments, certificates, or other property.  All of such financing statements, mortgages and fixture filings were validly executed by authorized representatives of the Debtors.  Pursuant to the Prepetition Credit Documents, the Prepetition Lenders have perfected security interests in and liens on all of the Prepetition Collateral, including all cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code). Moreover, pursuant to the Prepetition Credit Documents, the Prepetition Lenders have perfected first-priority security interests in and liens on all of the Revolving Priority Collateral, including the Cash Collateral.

(12)     The liens and security interests of the Prepetition Lenders in the Prepetition Collateral, including all cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) and the Cash Collateral, as security for the Prepetition Obligations, constitute valid, binding, enforceable and perfected liens and security interests and are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the DIP Liens, the Pari Passu Lien and the Carve-Out (each term as defined hereinafter) in accordance with the provisions of this Interim Order and except insofar as such liens are subordinated under the First Lien Intercreditor Agreement for the sole and exclusive benefit of the Term Loan Collateral Agent, the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders).  The Debtors further admit, acknowledge and agree that (i) the Prepetition Obligations constitute legal, valid and binding obligations of each of the Debtors, (ii) no offsets, defenses or counterclaims to the Prepetition Obligations exist and (iii) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(13)     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agent or any Prepetition Lender with respect to the Prepetition Credit Agreement or any other Prepetition Credit Documents, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(14)     As of the Commencement Date, the Prepetition Obligations for which the Debtors were truly and justly indebted to the Prepetition Lenders, without defense, counterclaim or offset of any kind, aggregated not less than approximately $115.4 million, comprised of not

less than approximately $90.4 million with respect to the Tranche A Revolving Credit Advances (as such term is defined in the Prepetition Credit Agreement) and approximately $25 million in aggregate principal amount of Tranche B Revolving Credit Advances (as such term is defined in the Prepetition Credit Agreement), plus all other Prepetition Obligations.

(15)     The aggregate value of the Prepetition Collateral granted or pledged to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, pursuant to the Prepetition Credit Documents, and the aggregate value of the Revolving Priority Collateral granted or pledged to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, pursuant to the Prepetition Credit Documents, is, in each case, equal to or greater than the aggregate amount of the Prepetition Obligations.

F.     The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Credit Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs.  The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Credit Facility and the use of Cash Collateral under the terms of this Interim Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to the Debtors' successful reorganization.  Consequently, without access to the DIP Credit Facility and the continued use of Cash Collateral, to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.

G.     The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on

unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Agent and the DIP Lenders on terms more favorable than the terms of the DIP Credit Facility. The only available source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Credit Facility. The Debtors require both additional financing under the DIP Credit Facility and the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy their postpetition liquidity needs.

H.     The DIP Agent and the DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order and the DIP Credit Documents represents the best financing presently available to the Debtors.

I.     Solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents, the Prepetition Agent and the Prepetition Lenders are prepared to consent to:  (i) the imposition of certain liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, which liens will prime the Primed Liens (as defined hereinafter), and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code, to grant to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, as and for adequate protection, but subject to the Carve-Out, (1) a replacement security interest in and lien and mortgage upon the DIP Collateral (as defined hereinafter) in favor of the Prepetition Agent and the Prepetition Lenders, which shall

be of equal priority with the DIP Liens (the "Prepetition Lenders' Replacement Lien") and (2) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (collectively, the "Adequate Protection Priority Claims"). The Prepetition Lenders' Replacement Lien and the Adequate Protection Priority Claims shall secure the payment of the Prepetition Obligations in an amount equal to the diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral from and after the Commencement Date including, without limitation, any such diminution resulting from: (i) the use by the Borrower of such collateral and cash constituting proceeds of such collateral, (ii) the imposition of those liens granted to the DIP Lenders which will prime the Primed Liens, (iii) the Carve-Out and (iv) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or (v) any other reason (the "Adequate Protection Obligations"). As additional adequate protection, the Prepetition Agent shall be entitled to the ongoing payment of the Prepetition Agreement Expenses, including the fees and expenses of legal counsel and other professionals retained by the Prepetition Agent, as and when due and payable under the Prepetition Credit Documents (without giving effect to any acceleration provision therein).

J. The consent of the Prepetition Agent and the Prepetition Lenders to the priming of their liens by the DIP Liens is limited to the DIP Credit Facility presently before the Court, with GE Capital as DIP Agent, and shall not extend to any other postpetition financing or to any modified version of the DIP Credit Facility with any party other than GE Capital as DIP Agent. Furthermore, the consent of the Prepetition Agent and the Prepetition Lenders to the priming of their liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Agent and the Prepetition Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.

K.    The security interests and liens granted pursuant to this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things:  (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Agent for the benefit of itself and the DIP Lenders, and/or (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

L.    Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2.  In particular, the authorization granted herein for the Debtors to execute the DIP Credit Documents, to continue using Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    The Debtors, the DIP Agent, and the Prepetition Agent have negotiated the terms and conditions of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are,

deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.       On or about October 17, 2008, the Borrower, the Prepetition Agent, the Term Loan Collateral Agent, the 18.5% Trustee and Bank of America, N.A. ("<u>Bank of America</u>") entered into that certain Blocked Account Agreement (With Activation) (as amended, restated, supplemented or otherwise modified (including, without limitation, by that certain Amendment No. 1 to Blocked Account Agreement, dated as of May 5, 2009), from time to time, the "<u>Blocked Account Agreement</u>") pursuant to which the parties thereto agreed, *inter alia*, that, subject to the terms and conditions thereof, Bank of America would act in accordance with the Prepetition Agent's instructions with respect to the bank accounts maintained at Bank of America by the Borrower (collectively, the "<u>Blocked Accounts</u>") identified therein.

O. Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.       *Approval of Motion*.  The Motion is approved on the terms and conditions set forth in this Interim Order.  This Interim Order shall become effective immediately upon its entry.  To the extent that the terms of the DIP Credit Documents differ from the terms of this Interim Order, this Interim Order shall control.  Each of the First Lien Intercreditor Agreement and the Second Lien Intercreditor Agreement is a "subordination agreement" for purposes of section 510 of the Bankruptcy Code.

2.       *Approval of DIP Credit Agreement, Authority Thereunder*.  The terms and conditions of the DIP Credit Agreement are hereby approved.  The Debtors are hereby authorized to enter into the DIP Credit Documents, including the DIP Credit Agreement, and such additional documents, instruments, and agreements as may be reasonably required by the

DIP Agent to implement the terms or effectuate the purposes of this Interim Order. The Borrower is hereby authorized to borrow money and obtain letters of credit under the DIP Credit Agreement, on an interim basis, up to an aggregate principal or face amount not to exceed $185,000,000, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such letters of credit, in accordance with the terms of this Interim Order, the DIP Credit Agreement, and the other DIP Credit Documents.

3.     *Use of Cash Collateral and DIP Loans*.     The Debtors are hereby authorized to use the Cash Collateral and proceeds of DIP Loans (as defined hereinafter) solely in accordance with the Budget (as defined hereinafter) and the financial covenants, availability formulae, and other terms and conditions set forth in the DIP Credit Agreement and this Interim Order.

4.     *Payment of DIP Fees and Expenses*.     The Debtors are hereby authorized to pay on demand all fees, expenses and other amounts payable under the terms of the DIP Credit Agreement, including, without limitation, all of the fees specified in the GE Capital Fee Letter (as such term is defined in the DIP Credit Agreement), and all out-of-pocket costs and expenses of the DIP Agent in accordance with the terms of the DIP Credit Agreement (including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Agent). None of such costs, fees, and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the DIP Agent shall submit copies of its professional fee invoices to the Debtors, and the Debtors shall send copies of such invoices to the U.S. Trustee and any Committee within five (5) business days of their receipt thereof; provided further, however, that such invoices may be redacted to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  In addition, the Debtors are hereby authorized to indemnify the DIP Agent and the DIP Lenders against any liability arising in connection with the DIP Credit Documents to the extent set forth in the DIP Credit Documents.  All such unpaid fees, expenses and indemnities of the DIP Agent shall constitute DIP Obligations (as defined hereinafter) and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Credit Documents.

5.      *Validity of DIP Credit Documents*.  Upon execution and delivery of the DIP Credit Documents, the DIP Credit Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the DIP Credit Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      *DIP Loans*.  All loans and letters of credit made to or for the benefit of the Debtors on or after the Commencement Date under the DIP Credit Documents, including the Prepetition Letters of Credit which shall be and hereby are deemed re-issued under the DIP Credit Documents (collectively, the "DIP Loans"), all interest thereon, and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtors to the DIP Agent and the DIP Lenders under the DIP Credit Documents and this Interim Order shall hereinafter be referred to as the "DIP Obligations."  The DIP Loans:  (i) shall be evidenced by the books and records of the DIP Agent or the DIP Lenders; (ii) shall bear interest payable at the

rates set forth in the DIP Credit Agreement; (iii) shall be secured in the manner specified in Paragraph 14 below; (iv) shall be payable in accordance with the terms of the DIP Credit Documents; and (v) shall otherwise be governed by the terms set forth herein and in the DIP Credit Documents.

7.     *Structure of DIP Credit Facility*.   The DIP Credit Facility shall be comprised of a revolving credit facility of $200,000,000, consisting of (i) a senior secured last-in first-out revolving credit tranche of $175,000,000 (the "LIFO Tranche"), which shall include (A) a letter of credit subfacility in the amount of $35,000,000 to be provided by an L/C Issuer (as defined in the DIP Credit Agreement) and (B) a swing line subfacility of $35,000,000 provided by the DIP Agent and (ii) a senior secured first-in last-out fully funded tranche of $25,000,000 (the "FILO Tranche"), provided, however, that the available amount of the DIP Credit Facility shall be reduced by a reserve in the amount of the Carve-Out and such other reserves as the DIP Agent may establish pursuant to the terms of the DIP Credit Agreement.  The aggregate amount of the DIP Loans available under the DIP Credit Facility shall not exceed $200 million (the "Maximum Amount"), provided, however, that the aggregate amount of the DIP Loans available under the DIP Credit Facility from time to time prior to the Termination Date (as defined hereinafter) shall be subject to Borrowing Base (as such term is defined in the DIP Credit Agreement) limitations, availability criteria and other terms (including in respect of a letter of credit sub-facility and swing line loans as noted, above), all as set forth in the DIP Credit Agreement.

8.     *Repayment of Prepetition Revolving Credit Advances; Continuing Payment of Prepetition Agreement Expenses*.  Subject to the terms and conditions contained in this Interim Order and the DIP Credit Agreement and as and for, *inter alia*, adequate protection, the Borrower shall use the proceeds of the DIP Credit Facility upon the entry of this Interim

Order and as a condition to the closing of the DIP Credit Facility, to pay in full all outstanding Prepetition Obligations. The Borrower also shall use the necessary proceeds of the DIP Credit Facility to pay and reimburse the Prepetition Agent (including, without limitation, in its capacity as "Collateral Agent" under the Prepetition Security Agreement) for the Prepetition Agreement Expenses as and when due under the terms of the Prepetition Credit Documents.

9. *Other Use of DIP Loans and Cash Collateral*. Subject to the terms and conditions set forth in this Interim Order and in the DIP Credit Documents, the Debtors may use the DIP Loans and the Cash Collateral, in accordance with the Budget, to: (i) pay interest, fees and expenses associated with the DIP Credit Facility, as provided in the DIP Credit Documents; (ii) prior to and up to an event of default under the DIP Credit Facility with respect to which a Carve-Out Trigger Notice (as defined hereinafter) is delivered to the Debtors, pay fees and expenses of professionals retained by the Borrower or the Committee (if any), to the extent set forth in the Budget and subject to such carve-outs as may be agreed to by the DIP Agent and the DIP Lenders, to the extent such professional fees and expenses are approved in accordance with compensation procedures approved by the Court and in form and substance acceptable to the DIP Agent; (iii) make the adequate protection payments (A) required under this Interim Order in respect of the Prepetition Revolving Loans under the Prepetition Credit Agreement, and (B) in respect of the Prepetition Term Loan Obligations that are set forth in the Budget and are set forth in the Term Loan/Second Lien Adequate Protection Order; and (iv) fund general, ordinary course corporate and working capital requirements of the Debtors, in each case in accordance with the Budget and the terms of the DIP Credit Documents.

10. *Conformity with Budget*. Subject to and in accordance with the terms of the DIP Credit Agreement, the Borrower shall from time to time prepare and provide to the DIP Agent detailed budgets, substantially in the form of the initial budget attached hereto as Exhibit

B (each, a "<u>Budget</u>," and, collectively, the "<u>Budgets</u>").  The Borrower may use the proceeds of the DIP Loans and the Cash Collateral solely for the purposes and up to the amounts set forth in the Budget, subject to the permitted variances and other terms and conditions set forth in the DIP Credit Agreement and this Interim Order.  Payment by the Debtors of expenses other than the items set forth in the Budget shall constitute an Event of Default (as defined hereinafter) unless the DIP Agent consents to such non-conforming payments in writing.

11.     *Application of Proceeds*.  All proceeds of DIP Collateral included in the Borrowing Base (as such term is defined in the DIP Credit Agreement and which Borrowing Base is comprised solely of Revolving Priority Collateral) collected after the Commencement Date shall be applied to the DIP Obligations (and, after an Event of Default and acceleration, to the DIP Obligations and the Prepetition Agreement Expenses), in the manner set forth in the DIP Credit Agreement.

12.     *Mandatory and Voluntary Prepayments*.  The Borrower shall make mandatory prepayments and may make voluntary prepayments of the DIP Loans as and when provided under, and for application in accordance with, the terms of the DIP Credit Agreement.

13.     *Continuation of Prepetition Liens and Prepetition Liens Securing DIP Obligations*.  Until payment in full of all of the obligations of the Borrower and the Guarantors with respect to the DIP Credit Facility and the Prepetition Credit Agreement, and termination of the DIP Lenders' commitments under the DIP Credit Facility, and until such time as the Prepetition Obligations shall have been allowed in full without the possibility of any further challenge, all liens and security interests of the Prepetition Agent and Prepetition Lenders (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein.  Notwithstanding any payment of all or any portion of the Prepetition Obligations, the Prepetition Liens shall continue

in full force and effect and shall, and shall be deemed to, secure the full and timely payment of the DIP Obligations (separate from and in addition to the DIP Liens granted to the DIP Agent and the DIP Lenders in Paragraph 14 below) until the payment in full of all of the DIP Obligations and the termination of the DIP Lenders' commitments under the DIP Credit Facility.

14.     *DIP Liens and DIP Collateral*.    As security for the full and timely payment of the DIP Obligations, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, enforceable, unavoidable, and fully perfected security interests in and liens and mortgages (collectively, the "DIP Liens") upon all existing and after-acquired tangible and intangible personal and real property and assets (including, without limitation, accounts receivable, inventory, equipment, fee and leasehold interests in real property, general intangibles, intercompany notes, cash, deposit accounts, rights, claims and causes of action (including causes of action under section 549 of the Bankruptcy Code) and all products and proceeds of the foregoing) of the Borrower and each Guarantor, including, without limitation, 100% of the outstanding equity interests in their subsidiaries that are not Foreign Subsidiaries (as defined in the DIP Credit Agreement) and 66% of the outstanding equity interests in their first tier Foreign Subsidiaries and all products and proceeds thereof (collectively, the "DIP Collateral")).  The DIP Collateral includes, subject to the terms of the First Intercreditor Agreement and this Interim Order, Revolving Priority Collateral and Term Loan Priority Collateral (as such term is defined in the First Lien Intercreditor Agreement).

15.     *Priority of DIP Liens*.  In order to give effect to the parties' intent to recognize the priorities established in the Intercreditor Agreements, the priorities of the DIP Liens shall be as follows:

A. With respect to DIP Collateral that is Revolving Priority Collateral, the DIP Liens shall be (X) senior to and prime (i) the Prepetition Liens, pursuant to section 364(d)(1) of the Bankruptcy Code, (ii) the Prepetition Term Loan Liens, the Prepetition Second Liens, any replacement lien in favor of the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders (the "Prepetition Term Loan Lenders' Replacement Lien"), and any replacement lien in favor of the 18.5% Trustee and the Prepetition Second Lien Noteholders (the "Prepetition Second Lien Noteholders' Replacement Lien"), pursuant to section 364(d)(1) of the Bankruptcy Code and, as applicable, the First Lien Intercreditor Agreement or the Second Lien Intercreditor Agreement, and (iii) any and all other claims, rights or liens against the Debtors in existence as of the Commencement Date (including, without limitation, any reclamation claims, rights or liens) that are junior in right or priority, or otherwise subject, to (as to Revolving Priority Collateral) the Prepetition Liens ((i), (ii) and (iii) above, collectively, the "Revolving Priority Collateral Primed Liens"), pursuant to section 364(d)(1) of the Bankruptcy Code; (Y) shall be *pari passu* in priority to the Prepetition Lenders' Replacement Lien (the "Revolving Priority Collateral Pari Passu Lien"), pursuant to section 364(d)(1) of the Bankruptcy Code; and (Z) shall be immediately junior in priority to any other valid, perfected, enforceable and non-avoidable liens (if any) in existence as of the Commencement Date that are senior in priority (as to Revolving Priority Collateral) to the Prepetition Liens (collectively, the "Revolving Priority Collateral Non-Primed Liens"), pursuant to section 364(c)(3) of the Bankruptcy Code (provided, however, that the DIP Liens shall be junior to the Revolving Priority Collateral Non-Primed Liens only with respect to the assets specifically and validly encumbered by any such Revolving Priority Collateral Non-Primed Liens);

B.  With respect to DIP Collateral that is Term Loan Priority Collateral, the DIP Liens shall be (WW) senior to and prime (aa) the Prepetition Liens, the Prepetition Second Liens and the Prepetition Second Lien Noteholders' Replacement Lien, pursuant to section 364(d)(1) of the Bankruptcy Code and the Second Lien Intercreditor Agreement, and (bb) any and all other claims, rights or liens against the Debtors in existence as of the Commencement Date (including, without limitation, any reclamation claims, rights or liens) that are junior in right or priority, or otherwise subject, to (as to Term Loan Priority Collateral) the Prepetition Liens ((aa) and (bb) above, collectively, the "Term Loan Priority Collateral Primed Liens" and, collectively with the Revolving Priority Collateral Primed Liens, the "Primed Liens"), pursuant to section 364(d)(1) of the Bankruptcy Code; (XX) shall be *pari passu* in priority to the Prepetition Lenders' Replacement Lien (the "Term Loan Priority Collateral Pari Passu Lien" and, collectively with the Revolving Priority Collateral Pari Passu Lien, the "Pari Passu Lien"), pursuant to section 364(d)(1) of the Bankruptcy Code; and (YY) immediately junior in priority to the Prepetition Term Loan Liens and the Prepetition Term Loan Lenders' Replacement Lien, pursuant to section 364(c)(3) of the Bankruptcy Code and the First Lien Intercreditor Agreement; and (ZZ) shall be immediately junior in priority to any other valid, perfected, enforceable and non-avoidable liens (if any, but excluding for purposes of this clause (ZZ) the Prepetition Term Loan Liens) in existence as of the Commencement Date that are senior in priority (as to Term Loan Priority Collateral) to the Prepetition Liens (collectively, the "Term Loan Priority Collateral Non-Primed Liens" and, collectively with the Revolving Priority Collateral Non-Primed Liens, the "Non-Primed Liens"), pursuant to section 364(c)(3) of the Bankruptcy Code (provided, however, that as to this clause (ZZ), the DIP Liens shall be junior to the Term Loan Priority Collateral Non-Primed Liens only with respect to the assets specifically and validly encumbered by any such Term Loan Priority Collateral Non-Primed Liens).  Subject to the terms of the First Lien

Intercreditor Agreement, the DIP Liens shall constitute first-priority security interests in and liens upon all DIP Collateral that is not otherwise subject to any valid, perfected, enforceable and non-avoidable lien in existence as of the Commencement Date, pursuant to section 364(c)(2) of the Bankruptcy Code. The DIP Liens shall be subject to the Carve-Out as and to the extent set forth in this Interim Order.

16. *Automatic Effectiveness of Liens*. The DIP Liens and the Pari Passu Lien shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Commencement Date without any further action by the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Primed Liens, the Pari Passu Lien, the Non-Primed Liens and other permitted liens and encumbrances as provided in the DIP Credit Agreement (which shall include, for avoidance of doubt, adequate protection liens of parties to the First Lien Intercreditor Agreement and the Second Lien Intercreditor Agreement to the extent that such liens are granted pursuant to the Term Loan/Second Lien Adequate Protection Order). If the DIP Agent hereafter requests that the Debtors execute and deliver to the DIP Agent financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent is hereby authorized to file or record such documents in its discretion, in which event all

such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. With respect to all unearned premiums, dividends and loss payments (collectively, the "Unearned Premiums") related to certain insurance policies (the "Financed Policies") financed by the Debtors through premium financing arrangements with AFCO Premium Credit LLC ("AFCO") and held by AFCO to secure the Debtors' annual premiums and other obligations arising under the Financed Policies (but only to the extent that AFCO has a properly perfected lien against and security interest in such Unearned Premiums), any lien granted under this Interim Order shall not extend to such Unearned Premiums, but only to the Debtors' reversionary rights, if any, in such funds.

17. *DIP Lenders' Superpriority Claims*. In addition to the liens and security interests granted to the DIP Agent pursuant to this Interim Order, subject to the Carve-Out and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Loans) shall constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provisions of the Bankruptcy Code, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, including the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code, and all proceeds thereof; provided, however, that, notwithstanding anything in this Interim Order to the contrary, the DIP Superpriority Claims shall be subject to the adequate protection claims of the Term Loan Collateral Agent, for the benefit of itself and the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders, to the extent set forth in the First Lien Intercreditor Agreement and in the Term Loan/Second Lien Adequate Protection Order (the

"Prepetition Term Loan Lenders' Adequate Protection Priority Claims"); provided, further, that, the DIP Superpriority Claims shall be senior to the adequate protection claims of the 18.5% Indenture Trustee and the Prepetition Second Lien Noteholders (the "Prepetition Second Lien Noteholders' Adequate Protection Priority Claims").

18.     *Carve Out*.  Upon and following an Event of Default with respect to which a Carve-Out Trigger Notice (as defined hereinafter) is issued, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Priority Claims, the Primed Liens and the Pari Passu Lien shall be subject to the payment of the Carve-Out.  For purposes of this Order, the "Carve-Out" shall mean, collectively:  (i) the payment of fees pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); (ii) following the date of a Carve-Out Trigger Notice, payment of allowed accrued and unpaid professional fees and expenses incurred by the Debtors (excluding any incurred and unpaid professional fees and expenses of any of the agents or lenders payable pursuant to this Interim Order or the Term Loan/Second Lien Adequate Protection Order), and any Committee (collectively, the "Professionals") in an amount not in excess of $1,000,000 plus all unpaid professional fees and expenses incurred prior to the delivery of a Carve-Out Trigger Notice to the extent set forth in the Budget through the date of the Carve-Out Trigger Notice and to the extent allowed by the Court (the "Professionals' Carve-Out"); provided, however, that the Professionals' Carve-Out shall be reduced, dollar-for-dollar, by the amount of any fees and expenses paid to the Professionals following delivery of a Carve-Out Trigger Notice to the Debtors; provided, further, however, that the DIP Agent shall be entitled to reduce, from time to time, the Borrowing Availability (as such term is defined in the DIP Credit Agreement) under the DIP Credit Agreement by the amount of the Professionals' Carve-Out that would exist if a Carve-Out Trigger Notice were issued at such time; and (iii) pursuant to section 726 of the Bankruptcy Code, in the event the Debtors' Reorganization Cases are converted to cases under

chapter 7 of the Bankruptcy Code, a separate and additional amount of $75,000 in the aggregate that may be used (subject to Paragraph 19 below (other than the proviso thereto)) for the reasonable fees and expenses of a chapter 7 trustee. Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been issued, the Debtors shall be permitted to pay fees to estate professionals and reimburse expenses incurred by estate professionals to the extent set forth in the Budget and that are allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code and compensation procedures approved by the Court, as the same may be due and payable, and the same shall not reduce the Professionals' Carve-Out. In any event, the DIP Agent and the Prepetition Agent reserve the right to review and object to any fee statement, interim application or monthly application issued or filed by estate professionals. Notwithstanding any provision (including, without limitation, any "variance" or similar provision) of this Interim Order, any Final Order or the DIP Credit Agreement to the contrary, aggregate cumulative expenditures for restructuring professional fees of the Debtors or any Committee shall not exceed 100% of the amount with respect thereto set forth in the Budget.

19. *Investigation of Prepetition Liens*. No portion of the DIP Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Term Loan Collateral Agent, the Prepetition Term Loan Agents, or the Prepetition Term Loan Lenders, including, without limitation, any action challenging or raising any defenses to the Prepetition Obligations, the DIP Obligations, or the Prepetition Term Loan Obligations or the liens of the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Term Loan Collateral Agent, the Prepetition Term Loan Agents, or the Prepetition Term Loan

Lenders; provided, however, that the Debtors shall not prosecute any such claims or causes of action; provided, further, that no more than $50,000 of the proceeds of the DIP Credit Facility or the DIP Collateral may be used by any Committee to investigate the prepetition liens and claims of the Prepetition Agent, the Prepetition Lenders, the Term Loan Collateral Agent, the Prepetition Term Loan Agents and the Prepetition Term Loan Lenders.

20. _Cash Management System_. The cash management system described in the DIP Credit Agreement (the "Cash Management System") and all accounts established in connection therewith shall be used for the purposes and on the terms and conditions set forth in the DIP Credit Agreement and the other DIP Credit Documents. The Debtors are further authorized to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the DIP Agent for purposes of facilitating cash collections from the Debtors in accordance with the terms of the DIP Credit Agreement. Except to the extent otherwise expressly set forth in the DIP Credit Agreement, the Debtors shall remit to the DIP Agent all Cash Collateral in or that comes into the Debtors' possession for application to the DIP Obligations in accordance with the terms of the DIP Credit Agreement.

21. _Shared Control Between Prepetition Agent and DIP Agent_. The Prepetition Agent shall immediately share dominion and control with the DIP Agent with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement with the Prepetition Agent as of the Commencement Date (including, without limitation, existing deposit account control agreements among one of the Debtors, the Prepetition Agent and Bank of America), and each of such deposit account control agreements shall hereafter be enforceable by the DIP Agent against, and binding upon, each depository institution party thereto until the DIP Obligations have been paid in full in cash and the DIP

Credit Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the Prepetition Agent.

22. _Adequate Protection for Prepetition Lenders_.

A. As adequate protection for the payment of the Adequate Protection Obligations, subject to the Carve-Out, the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, shall be, and hereby is, granted the Prepetition Lenders' Replacement Lien and the Adequate Protection Priority Claims (each as defined in Paragraph I above). In order to give effect to the parties' intent to recognize the priorities established in the Intercreditor Agreements, the priority of the various adequate protection liens and claims shall be as follows: with respect to Revolving Priority Collateral, the Prepetition Lenders' Replacement Lien shall be _pari passu_ with the DIP Liens, junior to the Revolving Priority Collateral Non-Primed Liens with respect to the assets specifically and validly encumbered by any such Revolving Priority Collateral Non-Primed Liens and senior to any other liens, including, without limitation, to the Revolving Priority Collateral Primed Liens. With respect to Term Loan Priority Collateral, the Prepetition Lenders' Replacement Lien shall be _pari passu_ with the DIP Liens, junior to the Prepetition Term Loan Liens, junior to the Prepetition Term Loan Lenders' Replacement Lien, junior to the Term Loan Priority Collateral Non-Primed Liens with respect to the assets specifically and validly encumbered by such Term Loan Priority Collateral Non-Primed Liens and senior to any other liens, including, without limitation, the Term Loan Priority Collateral Primed Liens. With respect to adequate protection claims arising from any diminution in the value of the Revolving Priority Collateral, the Adequate Protection Priority Claims shall be equal in priority to the DIP Superpriority Claims and senior in priority to all other adequate protection claims. With respect to adequate protection claims arising from any diminution in value of the Term Loan Priority Collateral, the Adequate Protection Priority Claims shall be senior in priority

to all adequate protection claims other than the Prepetition Term Loan Lenders' Adequate Protection Priority Claims;

B.     As additional adequate protection, (i) the Prepetition Agent shall be entitled to the ongoing payment of the Prepetition Agreement Expenses, including the fees and expenses of legal counsel and other professionals retained by the Prepetition Agent, as and when due and payable under the Prepetition Credit Documents (without giving effect to any acceleration provision therein); and (ii) except for the DIP Credit Facility, the DIP Liens granted to the DIP Agent and the DIP Lenders pursuant to this Interim Order, the Prepetition Term Loan Lenders' Replacement Lien with respect to the Term Loan Priority Collateral and the Prepetition Term Loan Lenders' Adequate Protection Priority Claims with respect to the Term Loan Priority Collateral, the Debtors shall be prohibited from incurring additional indebtedness with claim status with priority over the Prepetition Obligations or liens equal to or senior in priority to the Prepetition Liens, _provided_ that the Debtors may incur liens which constitute Permitted Encumbrances (as such term is defined in the DIP Credit Agreement) or are otherwise permitted pursuant to Section 5.2(a) of the DIP Credit Agreement.

23.     _506(c) Waiver_.     Upon the entry of the Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders upon, the DIP Collateral and the Prepetition Collateral.  In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral.

24.     _Restrictions on Granting Post-Petition Liens_.     Except for the Carve-Out, Permitted Encumbrances, liens otherwise permitted pursuant to Section 5.2(a) of the DIP Credit

Agreement or as expressly set forth in this Interim Order, the Prepetition Term Loan Lenders' Replacement Lien with respect to the Term Loan Priority Collateral or the Prepetition Term Loan Lenders' Adequate Protection Priority Claims with respect to the Term Loan Priority Collateral, no claim or lien having a priority superior to or *pari passu* with those granted pursuant to this Interim Order to the DIP Agent and the DIP Lenders, or the Prepetition Agent and the Prepetition Lenders, respectively, shall be granted or allowed while any portion of the DIP Credit Facility (or any refinancing thereof), the Revolving Loan Commitments (as such term is defined in the DIP Credit Agreement) thereunder, the DIP Obligations, or the adequate protection obligations owing to the Prepetition Agent and/or the Prepetition Lenders remain outstanding; provided, however, that any liens constituting Permitted Encumbrances or otherwise permitted pursuant to Section 5.2(a) of the DIP Credit Agreement shall have the same relative priority vis-à-vis the DIP Liens and the Pari Passu Lien as they have vis-à-vis the Prepetition Liens. Except as expressly permitted by the DIP Credit Agreement, the Debtors shall not grant mortgages, security interests, or liens in the DIP Collateral to any parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

25. *Binding Nature of Order*. The provisions of this Interim Order shall be binding upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of any Debtor's estate or with respect to its property).

26. *Survival of Order*. The provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Debtors' Reorganization Cases; (ii) converting any of the Debtors' Reorganization Cases to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Debtors' Reorganization Cases; and (b) shall continue in full force and effect

notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Credit Agreement. The DIP Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in any of the Debtors' Reorganization Cases, and the Debtors shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

27. *Protection under Section 364(e)*. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or adequate protection obligations owing to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders incurred prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations or adequate protection obligations owing to the Prepetition Agent or the Prepetition Lenders. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or adequate protection obligations owing to the Prepetition Agent or the Prepetition Lenders by the Debtors prior to the actual receipt by the DIP Agent or the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Credit Documents with respect

to all uses of Cash Collateral and the incurrence of DIP Obligations and adequate protection obligations owing to the Prepetition Lenders.

28.     _Events of Default_.  Except as otherwise provided in this Interim Order or to the extent the DIP Agent may otherwise agree in writing, any violation of any of the terms of this Interim Order or any occurrence of an "Event of Default" pursuant to Section 7 of the DIP Credit Agreement shall constitute an event of default (each, an "Event of Default").

29.     _Modification of Stay_.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Credit Documents, and to take any or all of the following actions without further order of or application to this Court: (a) immediately terminate the Debtors' use of Cash Collateral and cease making any DIP Loans to the Debtors; (b) immediately declare all DIP Obligations to be immediately due and payable and require the Debtors to cash collateralize all Letter of Credit Obligations (as defined in the DIP Credit Agreement) as provided in the DIP Credit Agreement; (c) immediately terminate the Revolving Loan Commitments; (d) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Lenders for application towards the DIP Obligations; provided, however, that to the extent such DIP Collateral constitutes Term Loan Priority Collateral, the DIP Agent's and the DIP Lenders' enforcement of their rights with respect thereto shall be subject to the terms of the First Lien Intercreditor Agreement; and (e) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Credit Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that the DIP Agent shall

provide five (5) days written notice (by facsimile, telecopy, electronic mail or otherwise) to counsel to the Debtors, counsel to any Committee, and counsel to the U.S. Trustee prior to exercising any setoff or other lien enforcement rights or remedies with respect to the DIP Collateral. Upon entry of this Interim Order, no party in interest shall have the right to contest the enforcement of the remedies set forth in this Interim Order and the DIP Credit Agreement on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party in interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of this Interim Order or the DIP Credit Agreement. The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Lenders may have under the DIP Credit Documents or otherwise. The Borrower shall cooperate fully with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.

30. _Limitations on Borrowings_. In further consideration for the DIP Lenders' agreement to provide the DIP Credit Facility, and the Prepetition Lenders' consent to the use of Cash Collateral, the Debtors, on behalf of themselves and their respective estates, agree that neither the Debtors nor any party acting on their behalf (including any Committee) may seek authorization for the Debtors to borrow money from any person other than the DIP Lenders to the extent that the repayment of such borrowings is to be secured pursuant to section 364(d)(1) of the Bankruptcy Code by a lien or security interest that is senior or equal to the liens and security interests held by the Prepetition Agent (for the ratable benefit of the Prepetition Lenders), including the Prepetition Lender Replacement Liens, or by the DIP Agent, unless the Debtors

provide for the immediate indefeasible payment in full in cash of the DIP Obligations and the Prepetition Agreement Expenses at closing in connection with such borrowings.

31.     [Intentionally omitted.]

32.     *Modifications of DIP Credit Agreement and Budgets*.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Agent providing for any non-material modifications to the Budget or the DIP Credit Agreement, or of any other modifications to the DIP Credit Agreement necessary to conform the DIP Credit Agreement to this Interim Order; provided, however, that notice of any material modification or amendment to the Budget or the DIP Credit Agreement shall be provided to counsel to any Committee and counsel to the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment.  If any Committee or the U.S. Trustee timely objects to any material modification or amendment to the Budget or the DIP Credit Agreement, such modification or amendment shall only be permitted pursuant to an order of this Court.

33.     *Stipulations Regarding Prepetition Obligations and Prepetition Liens Binding on Parties in Interest*.  The stipulations and admissions contained in this Interim Order, including, without limitation, in recital Paragraphs E(1), E(2), E(5), E(8), E(11), E(12), E(13), E(14) and E(15) of this Interim Order, shall be binding on all parties in interest, including, without limitation, any Committee, unless, and solely to the extent that, (a) any Committee, or another party in interest with standing and requisite authority, has timely commenced an appropriate contested matter or adversary proceeding (subject to the limitations set forth in Paragraph 19 hereof) (a "Challenge") challenging the amount, validity, or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition Liens, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Prepetition

Agent or the Prepetition Lenders relating to the Prepetition Obligations no later than the earlier of the date that is (X) sixty (60) days after the Commencement Date or (Y) five (5) days before the day on which a hearing on the confirmation of any plan proposed by any Debtor (the "Vertis Plan") or the day on which a hearing on the consideration of a disclosure statement filed in connection with the Vertis Plan (the "Hearing"), whichever is earlier, is first set, provided however that if an order confirming the Vertis Plan is not entered by the Court at the conclusion of the Hearing on the first date on which the Hearing is set, such date as shall be directed by the Court but no later than the date set forth in clause (X) of this sentence, and (b) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. If no such Challenge is timely commenced as of such date then, without further order of the Court, (i) the claims, liens and security interests of the Prepetition Agent and the Prepetition Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Debtors' Reorganization Cases and any subsequent chapter 7 cases and shall not be subject to challenge by any party in interest as to validity, priority or otherwise, and (ii) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Agent and the Prepetition Lenders with respect to the Prepetition Credit Documents or any related transactions. Notwithstanding anything to the contrary herein, if any such Challenge is timely commenced, the stipulations contained in Paragraphs E(1), E(2), E(5), E(8), E(11), E(12), E(13), E(14) and E(15) of this Interim Order shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this Paragraph 33) except to the extent that such stipulations are expressly and successfully challenged in such Challenge.

34. *Termination of Commitments*. The commitment of the DIP Lenders shall terminate and all amounts owing under the DIP Credit Facility shall be due and payable (and, as

to letters of credit then outstanding, the Debtors shall be obligated to deposit with the DIP Agent cash in an amount equal to 105% of the face amount of such letters of credit), on the earliest to occur of the following (the "Termination Date"): (1) the date that is six (6) months after the date of the DIP Credit Documents, (2) the effective date of a confirmed plan acceptable to the DIP Agent in the Debtors' Reorganization Cases, (3) the Borrower's receipt of written notice (which notice may be delivered by facsimile or other electronic transmission and may be delivered to the chief financial officer of the Borrower) of the occurrence of an Event of Default hereunder or under the definitive DIP Credit Facility documents and a determination by the DIP Agent or Requisite Lenders (as defined in the DIP Credit Agreement) to terminate the commitments and to terminate the DIP Lenders' consent to the Borrower's and Guarantors' use of Cash Collateral (such notice, a "Carve-Out Trigger Notice") and (4) the payment in full in cash (or, as applicable cash collateralization at 105%) of all obligations under the DIP Credit Facility and the payment in full in cash (or, as applicable cash collateralization at 105%) of all Prepetition Obligations.

35.     *Master Proof of Claim*.  The Prepetition Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "Master Proof of Claim") on behalf of itself and the Prepetition Lenders on account of their prepetition claims arising under the Prepetition Credit Documents, and the Prepetition Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  If the Prepetition Agent so files a Master Proof of Claim against the Debtors, the Prepetition Agent and each Prepetition Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the Prepetition Credit Documents, and the claims of the Prepetition Agent and each Prepetition Lender (and their respective successors and assigns) named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each

of the Debtors' Reorganization Cases or any successor cases in the amount set forth opposite each name listed in the Master Proof of Claim.  The Prepetition Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims.  The provisions set forth in this Paragraph 35 and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the Prepetition Agent and each Prepetition Lender as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

36.     *Final Hearing*.  The Final Hearing is scheduled for December 16, 2010, at 11:00 a.m. (prevailing Eastern Time) before this Court.  Any objections by creditors or other parties in interest to any provisions of this Interim Order shall be deemed waived unless timely filed and served in accordance with this Paragraph 36.  The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties.  The notice of the entry of this Interim Order and the Final Hearing and shall state that objections to the entry of the Final Order shall be filed with the United States Bankruptcy Court for the Southern District of New York by no later than 5:00 p.m. (prevailing Eastern Time) on December 10, 2010 (the "Objection Deadline").  The continued availability of the DIP Credit Facility shall be subject to the entry in the Debtors' Reorganization Cases, not later than the earlier of (x) forty-five (45) days after the entry of this Interim Order or (y) the close of business on the day on which a hearing on the Vertis Plan is first set, by the Court of a Final Order,

following proper notice and hearing thereon, which is in all respects satisfactory to the DIP

Agent and the DIP Lenders.

Dated: November 19, 2010
      New York, New York

                 */s/ Allan L. Gropper*
                 UNITED STATES BANKRUPTCY JUDGE