<u>Exhibit C</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
                                   :
In re:                             :   Chapter 11
                                   :
VERTIS HOLDINGS, INC., *et al.*,   :   Case No. 10- 16170 (ALG)
                                   :
    Reorganized Debtors.           :   (Jointly Administered)
                                   :
---------------------------------- x

### DECLARATION OF JOSHUA SCHERER IN SUPPORT OF REORGANIZED DEBTORS' OMNIBUS OBJECTION TO THE CLAIMS OF QUINCY L. ALLEN (CLAIM NOS. 57, 58, 70 AND 71)

I, Joshua Scherer, being fully sworn, hereby depose and say:

1. I am a Partner with Perella Weinberg Partners LP ("PWP"), which, together with its affiliates, is a global financial services firm that provides corporate advisory, private placement and asset management services to clients. I submit this declaration (the "Declaration") on behalf of PWP in support of the Reorganized Debtors' Omnibus Objection to the Claims of Quincy L. Allen (Claim Nos. 57, 58, 70 and 71) (the "Objection").[1]

2. The statements in this Declaration are, except where specifically noted, based on either my personal knowledge or opinion, on information that I have received from the Reorganized Debtors' employees or advisors and/or employees of PWP working directly with me or under my supervision, direction, or control, or from the Reorganized Debtors' business records maintained in the ordinary course of their businesses. I am not being compensated specifically for this testimony other than payments received by PWP as a professional for the Reorganized Debtors.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Objection.

## QUALIFICATIONS AND BACKGROUND

3. I have considerable experience with chapter 11 restructuring and other distressed company circumstances. Specifically, I have been involved in numerous large and complex restructurings including Air Canada, American Color Graphics, Crusader Energy, Delta Airlines, Pierre Foods, Spectrum Brands, and US Airways.

4. I have been with PWP for over three years, focusing mainly on financial restructuring. Prior to my work at PWP, I was a Director at Houlihan Lokey Howard & Zukin. In that capacity, my efforts were focused on financial restructuring as well as mergers and acquisitions. Previously in my career, I was an investment banking analyst at Merrill Lynch & Co. in both New York and Hong Kong. I hold a B.A. in Economics, summa cum laude, from Middlebury College.

5. PWP's corporate advisory practice is focused on providing public and private clients with advice related to mergers and acquisitions and financial restructurings. PWP's financial restructuring practice works with companies, investors and other parties-in-interest in turn-around and distressed situations. PWP's professionals have extensive experience working with financially troubled companies in complex financial restructurings both out of court and in chapter 11 proceedings. PWP and its professionals have been involved as advisors to debtor, creditor, and equity constituencies and government agencies in many reorganization cases such as Accuride, Boston Generating, Georgia Gulf Corporation, Herbst Gaming, Muzak Holdings, Masonite International and Texas Rangers.

6. PWP began working as the Company's financial advisor in October 2009 in connection with the Company's initial debt-for-equity exchange offer for the Company's 13.5% Senior Paid-In-Kind Notes due 2014 (the "Senior PIK Notes"), commenced in January

2010.  PWP acted as the Company's sole financial advisor for this transaction, and served as the primary contact for the holders of Senior PIK Notes, both in terms of identifying the beneficial owners and persuading them to participate in the exchange offer.  PWP also advised the special committee of the Company's board of directors about the fairness of the transaction to equity holders from a financial point of view and provided a number of fairness opinions to the special committee in this respect.

      7.  In April 2010, the Company launched two exchange offers and consent solicitations whereby the Company offered to exchange the Senior PIK Notes for either equity or cash and the 18.5% Senior Secured Second Lien Notes due 2012 (the "Second Lien Notes") for a combination of cash and new secured notes.  In this comprehensive refinancing, PWP again provided a fairness opinion to the special committee and also acted primarily as the Company's financial advisor with respect to the exchange offer for the Senior PIK Notes.  The Company significantly modified the terms of both exchange offers on several occasions from April 2010 to August 2010, and PWP served as the primary contact for the holders of Senior PIK Notes throughout this period.  On November 1, 2010, the Company launched the solicitation of the Plan and Disclosure Statement, as well as the out-of-court exchange offers.  PWP served as the Company's financial advisor in connection with the Plan, the Disclosure Statement and out-of-court exchange offers, and negotiated with holders of the Second Lien Notes and Senior PIK Notes to develop a consensual restructuring of the Company through the Plan or the out-of-court exchange offers.  In conjunction with the Disclosure Statement and Plan, the Company directed PWP, as the Company's financial advisor, to prepare a valuation analysis of the likely range of reorganization value of the Company upon emergence from chapter 11.  Accordingly, PWP prepared the "Reorganization Valuation Analysis," which is contained in Appendix E of the

Disclosure Statement, setting forth the range of the Company's reorganization value, under the circumstances and using the assumptions set forth therein, following the emergence from chapter 11. Moreover, and in support of confirmation of the Plan and on behalf of PWP, I submitted the Declaration of Joshua Scherer in Support of Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Vertis Holdings, Inc. et al. (Docket No. 115).

## IMPLIED ENTERPRISE VALUE

8. It is my understanding that, in connection with the confirmation of the Plan, the Company rejected the Employment Agreement dated March 13, 2009, between Vertis Holdings, Inc., Vertis, Inc., and any of their respective successors, and Quincy Allen, and any and all agreements, incentives, or awards entered into in connection therewith (collectively, the "Employment Agreement"), a copy of which is attached to the Objection as Exhibit D. It is my further understanding that Mr. Allen has filed claims against the Company for damages arising from the rejection of the Employment Agreement, including a claim on account of an "exit bonus."

9. Specifically, it is my understanding that Vertis Long-Term Cash Incentive Plan Award Agreement (the "Award Agreement"), attached to as Exhibit A and a part of the Employment Agreement, provided for a cash award payable from a Bonus Pool (as defined in the Vertis Long-Term Cash Incentive Plan (the "LTIP")) to certain participants, including Mr. Allen, in the event that a Change of Control (as defined in the LTIP) occurred and resulted in an Incremental Enterprise Value (as defined in the LTIP) greater than $750,000,000. It is my understanding that the Award Agreement defines Incremental Enterprise Value in pertinent part as the total consideration paid in respect of the Debtors' outstanding debt and equity securities, less $750,000,000. Accordingly, for an award participant such as Mr. Allen to receive a payment

4

from the Bonus Pool, the total consideration paid to the Debtors and/or the Reorganized Debtors in connection with a transaction (i.e., the implied enterprise value resulting from such transaction(s)) must exceed $750,000,000.

10. The consummation of the transactions contemplated by the Plan resulted in, among other things, the following:

(a) the Company's entry into certain exit facilities consisting of a new term loan and a new revolving credit facility as well as issuance of the private placement contemplated by the Plan, whereby the proceeds of the exit facilities and the private placement were used to repay the prepetition revolving credit and debtor-in-possession facilities in the total amount of $89.9 million and the prepetition term loan in the amount of $420.2 million. (See Calculation of Incremental Enterprise Value attached Schedule 1 hereto, prepared by PWP in connection with the Objection);

(b) cancellation of the Second Lien Notes (in the total aggregate amount of approximately $495 million) and the distribution to holders of Second Lien Notes of new common equity interests in Vertis Holdings, Inc. As set forth in the Disclosure Statement and on Schedule 1 hereto, holders of "Series A" and "Series B" Second Lien Notes received a recovery of 41.7% on account of the receipt of equity interests in exchange for their Second Lien Notes, which percentage recovery assumes holders' participation in the $100 million private placement offering under the Plan. Holders of "Series C" Second Lien Notes received a recovery of 39.7% on account of the receipt of equity interests in exchange for their Second Lien Notes, which percentage recovery assumes holders' participation in the $100 million private placement offering. (See Schedule 1 hereto);

(c) cancellation of the Senior PIK Notes (in the total amount of approximately $258.4 million) and the distribution to holders of Senior PIK Notes of new common equity interests in Vertis Holdings, Inc. Holders of Senior PIK Notes received a recovery of 5.2% on account of the receipt of equity interests in exchange for their Senior PIK Notes. (See id.); and

(d) cancellation of the prepetition equity interests in Vertis Holdings, Inc. Holders of prepetition equity interests therefore received or retained no property on account of such interests under the Plan.

11. Accordingly, and based upon the implied values distributed to the lenders under the Company's prepetition term loan, prepetition revolving credit facility and debtor-in-possession facility and the holders of the Second Lien Notes and Senior PIK Notes, the implied enterprise value of the Reorganized Debtors upon consummation of the transactions contemplated by the Plan was $729.6 million as of the Effective Date of the Plan. (See Schedule 1 hereto).

## CONCLUSION

12. Based on the foregoing, I respectfully submit to the Court that because the implied enterprise value of the Reorganized Debtors resulting from consummation of the transactions contemplated by the Plan was $729.6 million as of the Effective Date of the Plan, the Incremental Enterprise Value of the Reorganized Debtors was negative $20.4 million (i.e., $729.6 million "less $750,000,000") and, accordingly, the Bonus Pool, if any, to be established under and pursuant to the Award Agreement in connection with such transactions was zero.

13. I hereby reserve my right to amend the testimony set forth herein as necessary to maintain the truth and correctness of this Declaration should new facts become

13. I hereby reserve my right to amend the testimony set forth herein as necessary to maintain the truth and correctness of this Declaration should new facts become known to me, if any.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of July, 2011.

_____
Joshua Scherer

<u>Schedule 1</u>

# VERTIS

**CALCULATION OF INCREMENTAL ENTERPRISE VALUE**  *Strictly Private & Confidential*

*($ in millions)*

|  | Pre-Restructuring | Recovery % | Implied Value |
|---|---:|---:|---:|
| Revolving Credit Facility Tranche A | $64.3 | 100.0% | $64.3 |
| Revolving Credit Facility Tranche B | 25.6 | 100.0% | 25.6 |
| Term Loan B | 76.1 | 100.0% | 76.1 |
| Term Loan C1 | 165.0 | 100.0% | 165.0 |
| Term Loan C2 | 179.1 | 100.0% | 179.1 |
| Second Lien Note Series A | 415.8 | 41.7% | 173.6 |
| Second Lien Note Series B | 56.0 | 41.7% | 23.4 |
| Second Lien Note Series C | 23.3 | 39.7% | 9.2 |
| Senior PIK Note | 258.4 | 5.2% | 13.3 |
| **Implied Enterprise Value** | | | **$729.6** |
| Less: Threshold Value | | | (750.0) |
| **Incremental Enterprise Value** | | | **($20.4)** |